TILGHMAN, BUCHANAN and NICHOLSON, J. concurred.
GANTT, J. dissented.

DECREE AFFIRMED.

BROGDEN vs. WALKER's Ex'r. Legatees and Devisees.

JUNE

APPEAL from a decree of the Court of Chancery. The bill in this case was originally filed on the 6th of August 1801, by the testator of the appellees, in his life-time, and it stated that *Brogden*, having a claim against him for £450 0 11, applied to him by letter dated the 27th of August 1800, to secure the payment of the debt by a mortgage, and again, by letters dated the 30th of March and 26th of May 1801; that the complainant, being willing to secure the payment of the debt, consented to give a deed of trust, or mortgage of his property, to *Brogden*, for that purpose, and by appointment met him at the city of *Annapolis* on the 17th of June 1801, to make the requisite conveyance, and on that day executed to *Brogden* a deed for two tracts of land, the one called *Row Downe*, and the other *Row Downe Security*, containing together 325 acres, and also a bill of sale of all his slaves and personal estate; but he expressly charged that the same were only intended as a security for the debt, and not as an absolute conveyance in fee simple to *Brogden*. That the

The act of 1797, ch. 114, s. 4, directing, "that if a cause in the court of chancery is set down regularly for hearing, or submitted to the chancellor, and one of the parties dies thereafter, and before a decree passed, the cause shall not abate, and the chancellor may decree as if such party were alive," cannot take effect in a cause where there might be a decree for a reconveyance of land to the party dead, on paying or bringing money into court.

A will containing the following devise viz. "I give and bequeath to my sister E W, all my real estate during her natural life, and after her decease to my nephew T W, and his heirs, lawfully begotten; but in case my said nephew should die before he arrives to the age of 21, or leaving issue lawfully begotten, then, &c.—*Held*, that the estate tail was docked by the deed from T W to W B, altho' W B was declared to hold the land conveyed, in trust for T W, and those claiming under him

A bill in the court of chancery, (which was afterwards, on the death of W, the complainant revived in the name of his executor, legatees and devisees,) charged that B, (the defendant and uncle of W,) committed a fraud in procuring W's execution and acknowledgment of deeds conveying his whole estate, real and personal, variant from those he had agreed to execute; that the deeds were intended only as a security for a debt due from W to B, and not as absolute conveyances in fee simple—Prayer for a discovery, and permission to redeem the property intended to be mortgaged, on paying the the d bt, and for a reconveyance and other relief. *Held*, without deciding whether or not there was fraud in obtaining the deeds, that the deeds are to be viewed as executed by a weak young man, conscious of his inability to protect his property, or to manage his own concerns, and therefore resolving to place hims lf under the guidance and protection of an affectionate relation That it could not be imagined he meant to convey every part of his ample property for the benefit of his kinsman only, and to be absolutely dependant on him for subsistence. The best and fairest construction is, that the deeds were intended to secure to B a debt, which was trifling, in comparison of the value of the property conveyed. Here then was a resulting trust, or here there was an equity of redemption, or here was a silly intemperate young man, who really did not know what he was about, and who therefore ought to have the protection of a tribunal, whose peculiar duty it is to watch over ideots, lunatics, madmen and fools If W was actually apprized of the purport of the deeds, yet it may be said that it was sufficient for B to have an ample security for his debt, and to screen his nephew from all imposition which might be attempted by others. *Decreed*, that on payment to B on or before, &c of the sum of money expressed in the bill of sale, with interest, &c B should convey, &c to the executor complainant, all the personal property, &c and on payment to B on or before, &c of the sum of money expressed as the consideration in the deed of conveyance, with interest, &c B should convey, &c unto the devisees complainants, and their heirs, according to the will of W, the land which was conveyed by W to B on, &c. But if the complainants should fail to make payments, &c there should be sold, for the payment to B of the said two sums of money, with interest, &c so much of the personal property and land, as should be necessary, &c

Fraud is not to be considered as a single fact, but a conclusion to be drawn from all the circumstances of the case

The relief which may have been obtained by a complainant who has died, may be granted to his representatives reviving the suit.

A representative, instituting an original suit, may have the same relief which his ancestor, devisor, testator, &c might have had.

complainant, being the nephew of *Brogden*, had, at the time of executing the deeds, the most unlimited confidence in his honour and integrity, and not in the least suspecting the purity of his intentions, but on the contrary taking it for granted that the conveyances were deeds of mortgage, or of trust, to secure the payment of the debt, pursuant to the propositions of *Brogden* in that respect, he executed the same without ever seeing them until the moment they were produced by *Brogden* for execution. That he never read the deeds, nor were they read to him, nor had he any knowledge of their contents, except as before stated, and that he executed them under the fullest conviction they were only deeds of mortgage, or of trust, to secure the payment of the debt, as *Brogden* never required more, and had no title or demand whatsoever, for a conveyance in fee simple. That the complainant, in January 1801, attained the age of twenty-one years, and for two years previous had been in the possession of his fortune, which was an ample one, consisting of land, negroes, and stock of all kind, worth at a moderate estimate 6 or 7000£. That coming to his estate at an early period of life, without the ordinary inducements to economy, or with resolution to withstand the temptations of dissipation and extravagance, he had indulged but too freely in the follies of youth, and had been too much addicted to drink, which destructive vice had often incapacitated him for business, and not unfrequently rendered him a dupe to the unprincipled artifices of designing men. That to his utter astonishment, he had lately discovered the deeds to *Brogden* were absolute conveyances, in fee simple, to him, of the property therein mentioned; and that, impressed with the flagrant injustice of the transaction, he immediately applied to him on the subject, and requested him to have the mistake rectified, which he well hoped he would have done without the least hesitation; but *Brogden*, in violation of honour and justice, refused to do it, and to the complainant's surprise, offered to reconvey the personal property, and also to convey to him an estate for life in the land, but positively refused to relinquish his claim or title to the latter in fee simple, alleging that if he did, the complainant would soon dissipate or spend it. That he was prepared, and offered to pay the debt due to *Brogden*, to secure the payment of which the deeds were exe-

1808.

Brogden
vs.
Walker

cuted, but he wholly refused to take the money, or to re-convey the property, saying he had a conveyance for it, and affected to think he was entitled to it, contrary to the avowed object of the complainant in making the conveyance, the obvious dictates of justice and the established laws of the land. That previous to the conveyances, the complainant had incurred debts to about £1000, which were fairly and honestly due, but which he was incapable to pay, as the whole of his property had been conveyed to *Brogden*. That the complainant's other creditors were pressing him for payment; that they suspected the conveyances were made with the fraudulent intention of cheating them of their honest claims, and have not scrupled to represent the transaction as such, which, to those unacquainted with the real motives of the complainant in making the conveyances, the circumstances afford but too much reason to believe; but he stated that the conveyances were made without any collusion with *Brogden*, or the most distant view of de-priving or defrauding any of his creditors of their just de-mands, which he was willing and desirous to pay, but which he never could accomplish, unless his property was restored to him. That his reputation had sustained a con-siderable shock, that he was reduced to indigence, and could not obtain credit in the country for a farthing. In fine, that he was a ruined man, unless he could procure relief in this court. *Prayer* for a discovery, and permis-sion to redeem the property intended to be mortgaged, on paying the debt, and for a reconveyance, and other relief, &c. The *answer* stated, that *William Brogden*, the fa-ther of the defendant, died intestate on the 1st of November 1770, leaving the defendant his heir at law, by which means all the real estate of his father descended to the defendant according to the then existing laws of this state; but that the defendant voluntarily, on the 18th of May 1775, exe-cuted a deed for the lands called *Row Downe*, and *Row Downe Security*, to *John Brogden*, the brother of the de-fendant, who by his last will, dated the 6th of April 1782, devised the same to his sister *Elizabeth Walker*, the mo-ther of the complainant, during her natural life, and after her decease, to his nephew *Thomas William Walker*, the complainant, and to his heirs lawfully begotten; but in case his said nephew should die before he arrived to the age of twenty-one, or leaving issue lawfully begotten, then the

real estate should go to his heir at law *William Brogden*, the defendant. That the defendant had a considerable claim against the complainant, who was the sole representative of his mother, amounting to £450, to be paid which said demand, or to secure which, the defendant was anxious, and he admitted, that for that purpose he wrote to the complainant the several letters referred to. That the complainant never did consent to secure the claim by way of mortgage, but after the letters were written and received, he came to the defendant, and voluntarily, and unsolicited by the defendant, proposed to him to give him an absolute conveyance for all his lands and negroes, the names of which he furnished the defendant with, stating it as his desire to convey all his estate, legal and equitable, to the defendant, and assigning it as a reason, that the estate had been originally conveyed by the defendant to his uncle voluntarily, and it was proper that it should go back to the same person; and also that he, the complainant, was surrounded with designing people, whose object was to cheat him out of his property; and that a Mr. *Clagett*, who held adjoining land, had said that he expected to get the land, and intended to live on it. The defendant thereupon appointed the complainant to meet him at *Annapolis*, on the 17th of June 1801, to execute the conveyances. The defendant employed *Richard Ridgely*, esquire, to prepare the conveyances, according to the agreement and proposition of the complainant, and he did accordingly prepare the two deeds referred to. That the complainant, agreeably to his appointment, met at *Annapolis* on the day appointed, quite sober, and called on *Ridgely* for the deeds, and they were delivered to him. That the complainant carried the deeds to the house of *James Mackubin*, esquire, a justice of the peace, and the complainant did there sign, seal and acknowledge, and delivered them to the defendant. That the complainant knew the object of the deeds, and they were designed by him to convey an absolute estate to the defendant. That the deeds were not intended or designed by the complainant or defendant as a security for the payment of any sum of money, or to be in any manner conditional, but were intended and designed, by both the complainant and defendant, to be absolute and unqualified conveyances to the defendant, of all the estate both legal and equitable, of the complainant, in

the property mentioned therein. The defendant denied all fraud, &c.

*Testimony* was taken under commissions, which it is not necessary to state.

HANSON, Chancellor, (22d December 1803.) In this cause the complainant applied by his bill for a reconveyance. The cause being set down for hearing, the death of the complainant is suggested, and admitted. The chancellor is now moved to proceed to a hearing and decree under the act of 1797, *ch.* 114. And the question is, whether there can be a decree without further proceedings.

On considering the act of assembly, it appears to the chancellor, that whenever he decrees in a case where one of the parties is dead, it must appear to him that the decree may be effectual. In other words, that he cannot decree with propriety where one of the parties is dead, unless his decree is to have substantial operation. In short, it appears to him that the act is confined merely to cases where money is, by the decree, to be paid or brought in, or the bill to be dismissed instead of money directed to be paid or brought in. Now, supposing the chancellor, in this case, of opinion, that there ought to be a reconveyance on paying or bringing in money—is it possible to conceive that the decree is to order money to be brought in or paid by a person who is not a party to the suit, and the conveyance to be made to the same, or another person, who is not a party to the suit. Now, it is clear to the chancellor, from a view of the act, if a decree takes place under it, that the decree must be between the parties to the suit. For instance, a decree for relief in this case would direct *the deceased* to bring in or pay money, and the defendant to convey to the deceased. The chancellor would suggest, for the consideration of the bar, the question, whether such a decree would not be a mere nullity, except that it would show his opinion, and lay a foundation for another suit, in which the representative of the deceased would be a party? But a bill of revivor would certainly be preferable to a new suit.

The act says, that the decree shall be as effectual as if the deceased were alive, except, &c. There is not a title in the act directing that the decree shall be *for* or *against* a representative to the deceased, who was not an

1808

Brogden
vs
Walker

original party; but suppose it did so direct; how is the chancellor to know the representative without further proceedings in the cause? Is he to act upon the bare allegation, or on exparte testimony? And if there are to be further proceedings, what can there be better than a bill of revivor? The meaning of the act appears to be merely confined to this—when one of the parties to a suit dies after a submission, or setting down for hearing, the chancellor may decree the payment of money to, or by, the deceased, and it shall give such a claim, as is founded on other decrees for or against the estate of the deceased; but the claim shall not be entitled to a preference. There probably may be some other cases; for instance a decree for recording a deed, where nothing is to be done by the deceased party. The more the chancellor reflects, the more he is confirmed in the opinion he has expressed, and the more he is convinced of the impropriety, and indeed impracticability, of the act having an operation more extensive than he has mentioned.

It does not appear to the chancellor proper to examine a cause merely to see whether he would dismiss the bill, unless the cause be of such a nature that a decree for relief might be effectual. The death of the complainant being suggested, a *bill of revivor* was filed by his executor and residuary legatees and devisees, stating the former proceedings, and the last will of *Walker*, &c. to which the defendant *answered*; in which, among other things, he stated that *Walker*, the testator, was never married, and died without issue; that the land and premises in question were devised and limited over by the will of *John Brogden* to the defendant, in case *Walker* should die before he arrived to the age of twenty-one, or leaving issue lawfully begotten. That he hath been informed, and believes, that *Walker* hath made a last will and testament in the manner stated, but believes the same was obtained from him through artifice and by imposition, and that the same was not executed by him at a time when he was of sound and disposing mind. That he should be able to prove, by several respectable witnesses, that *Walker*, shortly before his death, expressed himself perfectly satisfied with the disposition he had made of his real and personal property to the defendant, the same being made in conformity to his intentions.

The *commission*, by agreement, was opened for taking further testimony; further testimony was accordingly taken, and returned, which it is also unnecessary to state.

It was admitted that the defendant is the heir at law of *John Brogden*, and that *Rebecca Pinkney*, one of the complainants, was the half and only sister of *Walker*, and that he had no brothers or children.

HANSON, Chancellor, (February Term, 1805.) This is a case of a most delicate nature, in which the chancellor earnestly wished a compromise to take place. On this account it is that he has delayed his decision. He must now proceed to the performance of his duty, in giving such a decree as he deems consistent with, and required by, the established principles of equity.

The complainants pray relief on several different grounds—

1. They say the defendant committed a fraud in procuring *Walker's* execution and acknowledgment of deeds variant from those he had agreed to execute.

2. They say that if even *Walker* was apprised of the contents of the deeds, they ought to be either vacated or controled, on account of the defendant's having practised on an ignorant, imbecile, intemperate young man.

3. They contend, that if both these grounds should fail, and supposing the deeds to be, as they purport to be, deeds of real bargain and sale, the vast inadequacy of price, (£250 current money, the consideration mentioned in each of the deeds,) coupled with the suspicious circumstances disclosed by the evidence, ought to be considered as a foundation for setting them aside, or granting the complainants some other substantial relief.

It is proper for the chancellor, before he proceeds to a final decision, to remark on two points made on the part of the defendant.

It is contended, that *Walker* was a tenant in tail; that as he died without issue, and as *Brogden* was the reversioner in fee, the land must belong to *Brogden*, unless it can be shown that the entail was cut off. And that if the deed from *Walker* to *Brogden*, for conveying the real estate, be vacated, it cannot possibly be considered as having the operation of converting *Walker's* fee tail into a fee simple in *Brogden*, or that, if it has that operation, the fee must remain in *Brogden* to his own use.

The defendant's counsel has also insisted on that established well known principle in chancery, respecting the weight of an answer, which the defendant has been compelled to make on oath. It is true that the defendant has in his answer expressly denied all fraud and imposition wherewith he is charged, and that there is not a single witness to refute his answer.

As to the first point, the chancellor has not the least doubt, that if even *Walker* had only an estate tail, (which he is satisfied was not the case,) the said estate was completely destroyed by the deed executed to *Brogden*, and that *Brogden*, under the deed, was to hold the land, either to his own sole use, or in trust or by way of pledge or security.

As to the other point, the chancellor conceives, as on other occasions he has declared, that *fraud is not to be considered as a single fact, but a conclusion to be drawn from all the circumstances in the case.* It is certain, that although the defendant has generally denied fraud, he has denied but few of the matters charged in the bill.

But the chancellor does not consider himself under the disagreeable necessity of deciding, whether or not there was fraud in obtaining the deeds. He views the deeds as executed by a weak young man, conscious of his inability to protect his property, or to manage his own concerns, and therefore resolving to place himself under the guidance and protection of an able and affectionate relation. If it could be imagined that he meant to convey every part of his ample property for the benefit of that kinsman only, and to be absolutely dependent on him for subsistence, he must be deemed very little superior to an ideot. Were he alive, and in the place of the present complainants, who is there that would not declare it the duty of this tribunal to save him from the wretched consequences of an act proceeding from madness, folly, or habitual ebriety, &c.

Supposing the intent of the deeds to have been that *Walker* should retain his own property during life, and that afterwards his uncle should have an absolute fee, how different would deeds, properly prepared for that purpose, have been from the deeds executed by *Walker*. How different too, the chancellor must say, would have been the circumstances attending the execution and acknowledgment. The best and fairest construction is, that the deeds were intend-

ed to secure to *Brogden* a debt, which although greater than *Walker* might have admitted, was trifling in comparison of the value of the property conveyed, and to put it out of the power of the grantor to squander his estate, and become a prey to *designing men.* Here then was a resulting trust, or here there was an equity of redemption, or here was a silly, intemperate young man, who really did not know what he was about, and who therefore ought to have the protection of a tribunal, whose peculiar duty it is to watch over ideots, lunatics, madmen and fools.

The defendant having originally conveyed the land to his brother, from whom *Walker* derived it, most probably thought it justifiable for him to secure a return of it as soon as the miserable days of *Walker* should be ended. Let it be supposed that *Walker* was actually apprised of the purport of the deeds prepared by *Brogden's* attorney, as is contended by *Brogden*—what man of intelligence is there, that will not say that it was sufficient for him to have an ample security for his debt, and to screen his nephew from all imposition which might be attempted by others? Who is there that would say if *Walker* was of sound disposing mind when he made his will, that his will ought not to prevail? And if he was not of sound disposing mind, why was not his will contested?

It has been urged, on the part of the defendant, that the complainants are not creditors; that is to say, it is supposed, that not having paid a valuable consideration for *Walker's* property, they have no claim which ought to be regarded by this court against the legal title vested in *Brogden* by the deeds. No! if *Walker*, during his life, was entitled to relief, his representatives, on every sound principle, are also entitled. When has it ever been decided, by this or any other tribunal, that relief, which might have been obtained by a complainant who has died, shall not be granted to his representatives, reviving the suit? Or, even that a representative instituting an original suit, shall not have the same relief which would have been granted to his ancestor, devisor, testator, &c.

The chancellor repeats, that the decree he is about to make is not grounded on a conviction that fraud was perpetrated by the defendant. He is clearly of opinion, that the complainants are entitled to a decree in their favour on other substantial grounds. *Decreed,* that if the executor

1808.

Brogden
vs
Walker

complainant, shall bring into court on or before, &c. to be. paid to the defendant, the sum of £250, with interest from the 17th of June 1801, the defendant, by a good deed, acknowledged and recorded according to law, shall convey, &c. to the executor complainant, all the negroes, &c. And if the devisees complainants, or either of them, shall on or before, &c. bring into court the like sum of £250, with interest as aforesaid, to be paid as aforesaid, the defendant, by a good deed, &c. shall, give, grant, &c. unto the devisees complainants, and their heirs, as tenants in common, to have and to hold to them, and their heirs, to the use or uses mentioned in the last will of the said *Walker,* the land, on the said 17th of June 1801 by the said *Walker* conveyed unto the said *Brogden,* being parts of two tracts, &c. But if the said complainants shall fail to bring into this court the money hereby directed to be brought in on or before, &c. there shall be sold, for the payment to the defendant of the said two sums amounting to £500, with interest, &c. so much of the aforesaid personal property and land as shall be necessary; the personal property being first to be sold. And N. B. is hereby appointed trustee for making the said sale; and the course and manner of his proceedings shall be as follows, &c. The defendant appealed to this court.

The cause was argued before POLK, BUCHANAN, NICHOLSON and GANTT, J.

*Ridgely, Key, Shaaff* and *Taney,* for the Appellant, contended—1. That the bill is no evidence in the case; it is the allegation of the party in the language of counsel, *not sworn to.*

2. The answer denies expressly all fraud; and there is not such proof against the denial of fraud in the answer, as by the law and usage of the court of chancery entitles the appellees to a decree. *Wakelin vs. Walthal,* 2 *Chan. Ca.* 8. *Company of Pewterers vs. Governor of Christ's Hospital,* 1 *Vern.* 161. *Walton vs. Hobbs,* 2 *Atk.* 18. *Speed vs. Martin,* 2 *Com. Rep.* 588. *Robinson vs. Cuming,* 1 *Atk.* 473; and *Man vs. Ward,* 2 *Atk.* 228.

3. No witness is sworn on the part of the appellees who gives any legal, competent testimony; and neither fraud nor imposition is proved by any legal competent testimony—

1808.

Davis
vs.
Davis

the whole being hearsay or declarations of *Walker* him-self.

4. The deeds of conveyance transfer not only a legal, but an equitable estate to the appellant, not impeachable in a court of conscience, and were fairly obtained on a proper and good consideration. *Villers vs. Beaumont*, 1 *Vern.* 101; and *The King vs. The Inhabitants of Scammonden*, 3 *T. R.* 474.

5. If the deeds are declared null and void, as unduly obtained, yet the appellees should not have a decree for the real estate, as in such case it is *entailed property*, not devisable to the appellees by will, and belongs to the appellant as heir at law and remainder-man.

*Martin, Johnson* (Attorney-General,) and *T. Buchanan*, for the Appellees, cited *Clarkson vs. Hanway*, 2 *P. Wms.* 203. *Leathcote vs. Paignon*, 2 *Bro. Chan. Ca.* 167. *Ardglass vs. Muschamp*, 1 *Vern.* 237. *Bennet vs. Vade*, 2 *Atk.* 327. *Chesterfield vs. Janssen*, 2 *Ves.* 125, 155. *Exel vs. Wallace*, Ibid 324. *Bridgman vs. Green*, Ibid ___ 2 *Pow. on Cont.* 144, 145, 152 to 160. *Osmo__ vs. ___roy*, 3 *P. Wms.* 129. *Cole vs. Gibbons*, Ibid __ Chew's *Lessee vs. Weems*, (ante 173, note;) and *F__zier's case* cited in *Owinge vs. Reynolds, et al.* at Decembe__ ___, 1810.

DECREE AFFIRMED.

---

## Davis's Lessee vs. Davis's Heirs.

JUNE.

APPEAL from a judgment of the General Court, rendered in an action of *ejectment* brought by the appellant. The declaration contained a demise for a tract of land called *Brewerton*, containing 400 acres, and one for a tract called *Linham's Search*, containing 38 acres, both lying in *Anne-Arundel* county. There was also a demise for an undivided moiety of the same lands, omitting the quantity of acres contained in each tract. The defendant, (the ancestor of the appellees,) took general defence and issue was joined. The plaintiff, at the trial at May term 1805, read in evidence a grant dated the 7th of September 1659, to *John Brewer*, for a tract of land called *Brewerton*, formerly surveyed for *William Pytcher*, lying

*Where the facts offered in evidence by the plaintiff were not sufficient and legal evidence to warrant the jury in finding that a person, under whom the plaintiff claimed, died seized of the land for which the ejectment was brought, in opposition to 60 years possession of the defendant.——The strongest presumption of a good title, being in favour of the defendant*