**SIERRA PACIFIC POWER COM-PANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent,**

Pacific Gas and Electric Company, Intervenor.

No. 12430.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 12, 1955.

Decided Feb. 24, 1955.

Writ of Certiorari Granted May 23, 1955.

See 75 S.Ct. 785.

Mr. William C. Chanler, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, with whom Mr. Lawrence A. Baker, Washington, D. C., was on the brief, for petitioner.

Mr. Howard E. Wahrenbrock, Assistant General Counsel, Federal Power Commission, with whom Mr. Willard W. Gatchell, General Counsel, Federal Power Commission, was on the brief, for respondent.

Mr. F. T. Searls, San Francisco, Cal., of the bar of the Supreme Court of California, pro hac vice, by special leave of

Court, with whom Mr. Robert E. May, Washington, D. C., was on the brief, for intervenor.

Before PRETTYMAN, BAZELON and BASTIAN, Circuit Judges.

BAZELON, Circuit Judge.

In 1938, Pacific Gas and Electric Company, a public utility under the laws of California, and Part II of the Federal Power Act,[1] entered into its second 15-year contract to sell electric energy to Sierra Pacific Power Company, a public utility under the laws of California and Nevada. With the end of World War II, it became apparent that before expiration of this contract in 1953 Sierra's rapidly increasing demands would require either the construction of an additional transmission line into its area by P G & E, or the development of a new source of power. Accordingly, in 1947 Sierra commenced negotiations with P G & E and the Bureau of Reclamation which offered to furnish power from Shasta Dam.

At first P G & E offered a 15-year contract at the 1938 contract rates but with an "escalator fuel clause." Sierra rejected this and turned to intensive negotiations with governmental agencies for "cheap Government power." P G & E then proposed a lower rate (the so-called P-31 schedule) for the same term without the escalator clause. This proposal was accepted in June 1948 and embodied in a contract which was duly filed with the California Public Service Commission and the Federal Power Commission. The P-31 schedule was a lower rate approved by the California Public Service Commission (formerly Railroad Commission) to enable P G & E to retain business of customers that would otherwise "be lost altogether" to public power competition. But a significant condition of this approval was that any loss from such service would be borne by P G & E's stockholders and not by its other customers.

In 1952, however, when public power from Shasta Dam was no longer available to Sierra, P G & E sought the California Commission's approval for rate increases for Sierra and other customers under the P-31 schedule.[2] The Commission refused on the ground that the special contracts were entered into "in order to forestall alleged government competition and with the clear understanding that its stockholders must bear any burden * * *." In February 1953, in a further effort to increase its rates, P G & E filed the schedule of increased rates in question here with the Federal Power Commission under § 205 of the Federal Power Act.[3] Sierra thereupon intervened. It urged that § 205, which provides for Commission approval of newly proposed rates merely upon a finding that they are reasonable, is not applicable where, as here, approval would effect unilateral abrogation of a duly filed rate contract; that to effect such abrogation the Commission must first make the determination, provided for in § 206(a), that the rate contract to be superseded is "unjust, unreasonable, unduly discriminatory or preferential * * *."[4] The Federal Power Commission rejected this contention by a vote of three to two and approved the increased rates upon a finding, under § 205, that they were reasonable. Sierra brought this petition to review the Commission's action.

The novel and important question for decision is whether and to what extent the pre-existing right of utilities to enter into enforceable rate contracts has been abrogated by the Commission's power under the Act to regulate rates. Congress did not expressly abrogate that right. To find such abrogation by implication,

1. 49 Stat. 847 et seq. (1935), 16 U.S.C.A. § 824 et seq.

2. With the significant exception of one city which still could have utilized Shasta Dam power.

3. 49 Stat. 851 (1935), 16 U.S.C.A. § 824d.

4. 49 Stat. 852 (1935), 16 U.S.C.A. § 824e (a).

"* * * we must be guided by the principle that repeals by implication are not favored, and, indeed, that a statute will not be construed as taking away a common-law right existing at the date of its enactment, unless that result is imperatively required; that is to say, unless it be found that the pre-existing right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words, render its provisions nugatory."[5]

So guided, we examine the pertinent provisions of the Act.

■ Section 205(a) of the Federal Power Act requires that rates for the sale of electric energy within the Commission's jurisdiction shall be "just and reasonable." Section 205(c) provides that all rates, charges and contracts relating thereto shall be filed with the Commission. Section 205(d) provides that no change in such filed rates, charges, or contracts relating thereto shall be made without notifying the Commission. Section 205(e) authorizes the Commission, upon complaint or upon its own motion, to determine whether the newly proposed rate or charge is just and reasonable. In modifying a filed rate under § 205, it is not necessary to prove that the original rate is unjust or unreasonable; the new rate will take effect if the utility sustains the burden of proving that it is "just and reasonable".[6]

■ Under § 206(a), on the other hand, a finding of unreasonableness *is* a prerequisite to modification of a filed rate. That section authorizes the Commission, upon its own motion or upon complaint, to find that a rate, or contract affecting such rate, is "unjust, unreasonable, unduly discriminatory or preferential." If it so finds, it must determine and fix a "just and reasonable rate, charge * * * or contract to be thereafter observed * * *."[7]

The Commission argues that under both §§ 205 and 206(a) "the statutory scheme is to depend upon regulatory action and initiative in lieu of private contract to protect the buyers' interests— in the public interest." But we think this stretches the statutory scheme too far. The Act's primary aim is that only just and reasonable rates shall be charged. Since "statutory reasonableness is an abstract quality represented by an area rather than a pinpoint",[8] the statutory purpose may be satisfied by more than one rate. Clearly, if contract rates are reasonable, the public interest does not require allowance of higher rates upon the unilateral application of the seller under § 205, just because the Commission deems the higher rates also to be reasonable. Therefore, it does not "deprive the statute of its efficacy" to give effect to a duly filed rate contract until such time as the rates specified therein are found unreasonable under § 206(a).

We cannot agree with the Commission that this view of the statutory scheme is inconsistent with § 205's requirement that contracts and notice of any changes therein shall be filed with the Commission.[9] Regarding a comparable requirement in a Kansas statute, the Supreme Court said, "The consent of the Commission * * * is made

---

5. Texas & Pac. Ry. v. Abilene Cotton Oil Co., 1907, 204 U.S. 426, 437, 27 S.Ct. 350, 354, 51 L.Ed. 553. Cf. Federal Power Comm. v. Niagara Mohawk Power Corp., 1954, 347 U.S. 239, 252–253, 74 S.Ct. 487, 495, 98 L.Ed. 666, where the Court remarked: "To convert this Act from a regulatory Act to one automatically abolishing preexisting water rights on a nationwide scale calls for a convincing explanation of that purpose."

6. 49 Stat. 852 (1935), 16 U.S.C.A. § 824d(e).

7. 49 Stat. 852 (1935), 16 U.S.C.A. § 824e (a).

8. Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 1951, 341 U.S. 246, 251, 71 S.Ct. 692, 695, 95 L.Ed. 912.

9. 49 Stat. 851 (1935), 16 U.S.C.A. § 824d (c) and (d).

necessary only to prevent changing schedules without notice to the Commission, and thus to secure a proper supervision of schedules."[10] Obviously the mere fact that two parties have agreed upon a rate, or to a change therein, does not effect an exemption from regulation. We think these references contemplate continued use, rather than abandonment, of rate contracts.

Our view of the statutory scheme is supported by a recent Third Circuit case, Mobile Gas Service Corp. v. Federal Power Comm.,[11] and the authorities therein relied upon. Although the case arose under the Natural Gas Act, 15 U.S.C.A. § 717 et seq., §§ 4 and 5(a) of that Act correspond almost verbatim with §§ 205 and 206(a) of the Power

Act.[12] There, as here, the Commission had abrogated a pre-existing contract without any finding that the contract rate was unreasonable. With one judge dissenting, the Court of Appeals, in a carefully considered opinion, reversed the Commission's order. The court relied upon: (1) cases arising under the Public Utility Law of Kansas which contained provisions similar to §§ 4 and 5 (a) of the Natural Gas Act;[13] (2) the interpretation of the Gas Act adopted by the Court of Appeals for the Tenth Circuit in Colorado Interstate Gas Co. v. Federal Power Comm.;[14] (3) the doctrine that common law rights will not be impaired without a clear authorization;[15] (4) a colloquy at hearings on a predecessor bill;[16] and (5) the signifi-

10. Wichita R. & Light Co. v. Public Utilities Comm., 1922, 260 U.S. 48, 56–57, 43 S.Ct. 51, 54, 67 L.Ed. 124.

11. 3 Cir., 1954, 215 F.2d 883.

12. The Commission urges that the Mobile case differs from the present case in that the Commission was powerless under § 4(e) of the Gas Act to suspend the proposed increase pending determination of its reasonableness. While such a distinction exists, it was in no way determinative.

13. The Supreme Court of Kansas, in Kaul v. American Independent Telephone Co., observed: "The passage of the act did not automatically overthrow contracts nor set aside schedules of rates which had been agreed upon. * * * rates previously agreed upon between utilities and patrons will continue in force until the commission has found them to be unreasonable, and has prescribed other rates." 1915, 95 Kan. 1, 4, 147 P. 1130, 1131, emphasis supplied.

This view of the Kansas statute was embraced by the Supreme Court of the United States in Wichita R. & Light Co. v. Public Utilities Comm., 1922, 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124, and by the Court of Appeals for the Tenth Circuit in Allen W. Hinkel Dry Goods Co. v. Wichison Industrial Gas Co., 10 Cir., 1933, 64 F.2d 881.

14. 10 Cir., 1944, 142 F.2d 943, 954, affirmed, 1945, 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206, where the Court said: "The passage of the Act did not automatically overthrow the contracts into which these companies had previously

entered. Neither did it ipso facto set aside the schedules of charges upon which they had agreed. *Such rates and charges could be modified only after an express finding of unreasonableness.*" Emphasis supplied.

15. Citing Texas & Pac. Ry. v. Abilene Cotton Oil Co., 1907, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553; and Federal Power Comm. v. Niagara Mohawk Power Corp., 1954, 347 U.S. 239, 74 S.Ct. 487, 98 L.Ed. 666.

16. Since the provisions in question were virtually identical with those of the Power Act, which were already in operation, the witness' understanding of their meaning is pertinent here. That colloquy reads as follows:

"Mr. Halleck. Of course, it is your idea that if this bill should pass and the Commission be given the authority contemplated in this bill, that the contract could be superseded or invalidated insofar as attempt to fix the rates of charges is concerned?

"Mr. Booth. That certainly would be my position and we certainly would ask the Federal Power Commission promptly to consider the question as to whether or not the Natural Gas Pipeline Co. of America is earning an unfair return from the fair value of its property." *Hearings before House Committee on Interstate and Foreign Commerce on H.R. 4008*, p. 43, 75th Cong., 1st Sess. (1937).

This clearly suggests the understanding that contracts would remain in force unless they were "earning an unfair return * * *," i e., were unjust and unreasonable.

cant lack of debate on the question in view of the drastic impact wholesale abrogation of contracts would have had on the natural gas industry.[17] These grounds apply here.

■ Cases relied on by the Commission do not sustain its position. Tyler Gas Service Co. v. United Gas Pipe Line Co., which the Commission asserts is inconsistent with the Mobile case, expressly withheld any opinion as to the correctness of that decision.[18] Midland Realty Co. v. Kansas City Power & Light Co. upheld the constitutionality of the procedure adopted here by the Commission, but did so "upon the construction that the [Missouri] supreme court put upon the statute."[19] Obviously, in construing the Federal Power Act, we are not bound by the Missouri court's construction of its statute.

■ Although the Commission has at all times insisted that no finding of unreasonableness is required, the majority opinion approving the increase stated:

"* * * if a finding on the lawfulness of the 1948 contract rate were necessary or appropriate, on the record before us that finding would have to be that the 1948 rate is unreasonably low and therefore unlawful. For none of the evidence in this record warrants a finding that any rate would be reasonable that would produce a return of substantially less than the 4.75% resulting from the proposed rate, which is the minimum P G & E is willing to accept."

This statement, however, is based entirely upon a record made in a proceeding under § 205(e) in which the unreasonableness of the contract rate was not in issue. And, in any event, as the dissenting Commissioners observed, "no such finding is made. Rather, it seems to have been carefully avoided."

For the foregoing reasons, the order under review is set aside and the case remanded to the Commission with instructions either to dismiss the proceeding or for further proceedings under § 206(a).

So ordered.

---

17. We have been referred to no pertinent legislative history of the Federal Power Act, nor have we been able to find any discussion of the present problem in either the debates or committee reports.

18. 5 Cir., 1954, 217 F.2d 73, 78.

19. 1937, 300 U.S. 109, 113, 57 S.Ct. 345, 346, 81 L.Ed. 540.