RESH ET AL. *v.* RESH, GUARDIAN PENDENTE LITE FOR ORVIS RESH

[No. 149, September Term, 1973.]

*Decided February 1, 1974.*

134

The cause was argued before MURPHY, C. J., and BARNES,
SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Leonard A. Orman* for appellants.

*Thomas B. Dabney, Jr.*, for appellee.

SMITH, J., delivered the opinion of the Court.

This case was tried under unusual circumstances. The appellee here is styled as "Clark Eugene Resh, Guardian Pendente Lite for Orvis Resh." We shall refer to them as "Clark" and "Orvis", respectively. Orvis died prior to trial of the case below. The exact date of the death does not appear in the record, but the inference may be drawn that it was in the month preceding trial. No motion was made by an opposing party under Maryland Rule 220 d suggesting the death of Orvis. No motion was made under Rule 220 c by a personal representative as the successor in interest. In fact, we were informed at oral argument that up until then no application for letters testamentary or letters of

administration on Orvis' estate had been made. Thus, there is no personal representative. No one availed himself of Rule 220 e to suggest the death, nor did the chancellor on his own motion proceed as permitted under that rule.

Clark is a son of Orvis. As guardian pendente lite of Orvis, he filed a bill of complaint to set aside two conveyances. Defendants were his half brother, Norman Resh (Norman); his nephew of the whole blood, Denver Resh (Denver); and Denver's wife, Linda Resh. The first deed was a conveyance from Orvis and his second wife, the mother of Norman, to Norman. The second deed was dated the same day and was from Norman to Denver and his wife.

By the first deed Orvis and his wife conveyed a tract of substantial acreage in Garrett County to Norman for $1,000, retaining "a life interest and estate in and to the dwelling house located on the [said] described land, together with one acre surrounding the same," the life interest being for each of the grantors. Denver supplied the purchase money to Norman. Denver explained that the conveyance to him "was really [for his] protection," so "that [he] would have something for [his] thousand dollars." He confessed, however, under persistent questioning from the chancellor, that he would not be willing to convey the property back to Norman if the thousand dollars were refunded to him. There was evidence to the effect that Denver's father, Walter Resh, had previously attempted to acquire the property from his father and stepmother for $1,000, which had been refused. The chancellor (Hamill, J.), said in part:

> "Denver Resh testified that he induced Norman to convey the property to him, without the knowledge or consent of Mr. and Mrs. Orvis Resh, because he knew of Norman's mental deficiency, and only to protect his grandfather and step-grandmother, and to keep the property from getting into the hands of an outsider. It should be pointed out here that on a previous occasion Denver's father, Walter Resh, unsuccessfully endeavored to acquire this property from Mr. and

Mrs. Orvis Resh for $1,000.00 also, and they refused to convey to him at that time. It is also interesting to note that upon questioning by the Court as to whether or not Denver would be willing to reconvey the property back to his grandfather and step-grandmother, now that a guardian has been appointed for Orvis Resh, he stated he would not be willing to do so. Denver, who is a school teacher, is obviously the brains behind this entire transaction. He is the only member of the family who has received advanced education and who exhibits considerable business acumen. The evidence of Norman's mental deficiency and lack of business acumen is shown by the fact that he tried to sell his deed to the property to a sister for the amount of $200.00 after he had already conveyed the property to Denver. It is also noteworthy to point out here that the property has been appraised by an officer of the Garrett National Bank in Oakland, Maurice Brookhart, at $20,000.00, which included the reservation of a life estate.[1]

"For the reasons stated above, the Court is of the opinion that, owing to the age and mental and physical infirmities of Mr. and Mrs. Orvis Resh, and the fact that neither he nor his wife were advised of a simultaneous conveyance from Norman to Denver, constituting the deliberate withholding of a material fact to the transaction; and further considering the mental deficiency of Norman, and the undue influence practiced upon him by Denver, that both of these conveyances should be set aside and declared null and void, resulting in the vesting of title to said property in the estate of Orvis Resh, who is now deceased; upon reimbursement to Denver Resh the sum of $1,000.00 and the amount he has paid for taxes on said property."

1. An explanation does not fully appear, but one may infer from the record that the appraisal was done by agreement of counsel and that they and the court deemed the appraiser qualified.

A decree was passed accordingly.

The appellants urge here as their first ground, a point apparently not raised below, that the trial court did not have jurisdiction to hear and decide the case by virtue of the death of Orvis.[2] Under Rule 885 we "will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court . . . ." Questions as to jurisdiction of the subject matter are always before the Court and are exceptions to this general rule, however.

In *Watkins v. Wells*, 2 Gill & J. 220, 226 (1830), Judge Stephen said for our predecessors that "if [the ward] was dead, his guardianship had expired, and [the guardian] was no longer accountable in that character." More recently, the General Assembly by Chapter 4 of the Acts of 1969 has provided in what is now Maryland Code (1957, 1969 Repl. Vol.) Art. 93A, § 221:

> "The . . . disabled person, his personal representative, the guardian, or any other interested person may petition the court to terminate the guardianship. The court, upon determining, after notice and hearing, . . . that the . . . disabled person is presumptively dead, or that he has died, shall terminate the guardianship proceeding. Upon termination, title to the estate property shall pass to the former . . . disabled person, or to his personal representatives. . . ."

The "heirs of the . . . disabled person" are included within the definition of "interested persons" appearing in § 101(f) of Art. 93A.

Rule 220 b provides that "[a]n action in equity shall not abate by the death of a party thereto, where the right involved in the action survives." This action survives. With the adoption of Rule 220 many of the provisions formerly found in Arts. 16 and 75 were repealed. No change has been made in Code (1957) Art. 16, § 1 which provides:

---

2. Counsel appearing for the appellants here did not try the case below.

"If any party shall die after a cause has been set down for hearing, or submitted by both parties as ready for decision, the decree may be passed as if such party were alive, he having a solicitor in court; and such decree shall have the same effect as if no death had occurred, except that it shall not be entitled to a preference in the distribution of assets, either real or personal."

Not long after the enactment of Chapter 114 of the Acts of 1797, from whence came this section of the Code without change, a question closely related to the one here at issue reached the High Court of Chancery of Maryland. In *Brogden v. Walker*, 2 Har. & J. 285 (1806), our predecessors affirmed without opinion a decision of the chancellor entered in 1805. The complainant in that case sought reconveyance of land on the basis of fraud. He died after the case had been set down for hearing. His death was suggested and admitted. Chancellor Hanson had before him the preliminary matter of whether, as it was suggested to him, he might "proceed to a hearing and decree under the Act of 1797, ch. 114." His opinion in that preliminary matter in 1803 is printed. He said:

"On considering the Act of Assembly, it appears to the Chancellor, that whenever he decrees in a case where one of the parties is dead, it must appear to him that the decree may be effectual. In other words, that he cannot decree with propriety where one of the parties is dead, unless his decree is to have substantial operation. In short, it appears to him that the Act is confined merely to cases where money is, by the decree, to be paid or brought in, or the bill to be dismissed instead of money directed to be paid or brought in. Now, supposing the Chancellor, in this case, [is] of [the] opinion, that there ought to be a reconveyance on paying or bringing in money — is it possible to conceive that the decree is to order money to be brought in or paid by a person who is not a party to

the suit, and the conveyance to be made to the same, or another person, who is not a party to the suit[?] Now, it is clear to the Chancellor, from a view of the Act, if a decree takes place under it, that the decree must be between the parties to the suit. For instance, a decree for relief in this case would direct the deceased to bring in or pay money, and the defendant to convey to the deceased. The Chancellor would suggest, for the consideration of the bar, the question, whether such a decree would not be mere nullity, except that it would show his opinion, and lay a foundation for another suit, in which the representative of the deceased would be a party? But a bill of revivor would certainly be preferable to a new suit." *Id.* at 289.

Our present Rule 220 is intended to make a bill of revivor unnecessary. It will be noted that the exact same question raised by Chancellor Hanson is pertinent here. Orvis died subsequent to January 1, 1970. Therefore, under Code (1957, 1969 Repl. Vol.) Art. 93, §§ 1-301 and 12-102, title to real property would devolve upon his personal representative. How could a decree after his death for the payment of money by Orvis be binding upon a nonexistent personal representative?

In the more recent case of *Goldman v. Walker*, 260 Md. 222, 271 A. 2d 639 (1970), Judge Digges said for the Court that an action contesting the validity of a Nevada divorce, begun before the death of the former husband and brought in Maryland by the former wife, could not proceed until there had been compliance with Rule 220. That litigation directly affected title to real estate in Maryland, formerly owned as tenants by the entireties, and other property rights. The former husband died prior to the effective date of what is now Code (1957, 1969 Repl. Vol.) Art. 93. Therefore, title to real property passed directly to the heirs or devisees upon his death, rather than to the personal representative as is now the case under § 1-301. The addition of only an administrator *ad colligendum* as a party

defendant was held not sufficient. The case was remanded for further proceedings with the comment:

> "[O]n remand the trial judge should, after a hearing if appropriate, identify and join each necessary party so as to give him an opportunity to be heard. This may be accomplished through the procedures outlined in Maryland Rules 220c, d, e, f, h and 282." *Id.* at 226-27.

We conclude that in the interest of justice, and under the authority of Rule 871, this case should be remanded for the addition of proper parties, in this case the personal representative of Orvis and the widow of Orvis.[3] Upon the remand there may be additional evidence presented. Because it is possible that when the issues here are ultimately decided the record before the chancellor will not be the same as it now is, it would be unwise for us to express a view on the record as it previously developed before the chancellor. It is conceivable, of course, that a designated personal representative after being made a party to the proceeding may seek to dismiss it. In that event those entitled to share in Orvis' estate may wish to consider the applicability of *Tribull v. Tribull*, 208 Md. 490, 503, 119 A. 2d 399 (1956), to their situation.

> *Case remanded without affirmance or reversal for further proceedings; costs to abide the final result.*

---

**3.** Under Code (1957, 1969 Repl. Vol.) Art. 93, § 3-202, and our holding in Silberman v. Jacobs, 259 Md. 1, 267 A. 2d 209 (1970), dower is abolished, but the conveyance to Norman by its terms reserved a life estate in Orvis' widow.