**T. Carlton RICHARDSON, Appellant,**

v.

**Robert J. GREEN, Appellee.**

**No. 85–1352.**

District of Columbia Court of Appeals.

Argued May 13, 1987.
Decided July 6, 1987.

---

T. Carlton Richardson, Washington, D.C., pro se.

Shelby D. Green, Washington, D.C., for appellee.

Before PRYOR, Chief Judge, and TERRY and ROGERS, Associate Judges.

PRYOR, Chief Judge:

This is an appeal from the trial court's ruling in favor of appellee Robert J. Green in a contract action by appellant for recovery of legal fees he charged for his attempt to non-judicially dispose of the estate of Lucille Green, appellee's mother. The only issue on appeal is whether the trial court was correct in holding that the provisions of the District of Columbia Probate Reform Act of 1980 (D.C.Code §§ 20–101 *et seq.* (1981)) and, in particular, D.C.Code § 20–105 (1981) and D.C.Code § 19–301 (1981), cannot be interpreted so as to allow for the non-judicial disposition of an estate that comprises more property than contemplated by the express exception in D.C. Code § 20–357 (1981).

Appellant, an attorney, was hired by the family of Lucille Green, who died intestate on September 10, 1981,[1] to facilitate the disposition of her estate. He prepared a trust deed that purportedly transferred the heirs' (grantors') interests in the estate to Robert J. Green as trustee (grantee). No personal representative was appointed, and the trust deed was never executed. When the family refused to pay their bill for legal services, appellant brought suit. Appellee claimed that the Probate Reform Act of 1980, and specifically D.C.Code § 20–105 (1981), operates to vest legal title to all a decedent's property in the personal representative, and, therefore, appointment of a personal representative is a prerequisite to probate and distribution and precludes the possibility of non-judicial distribution. Appellant, in essence, argues that D.C.Code § 20–105 constitutes an instruction about what to do when a personal representative is appointed, but when, as here, no personal representative is appointed, non-judicial dispositions are still viable, as they were at common law.

The trial court correctly classified this issue as one of first impression, and following extensive analysis, concluded that "the plain language of § 20–105, the legislative history, the statutory scheme and construction, and Maryland law all point to the conclusion that any action respecting a decedent's property requires the appointment of a personal representative ... and that nonjudicial dispositions are abolished." Memorandum Opinion, Appendix A, *post* at 437. The court then found that "because the purpose of the contract was to nonjudicially dispose of the decedent's estate which is not legally possible based on D.C.Code § 20–105, the contract is null and void, and the defendant is under no duty to pay the legal service fees." *Id.* at 21.

This case is not simply a case of statutory interpretation. It also raises a more general question: what does it take for a statute, here the Probate Reform Act, to abolish a common law doctrine. In a similarly structured case, this court held that "no statute is to be construed as altering the common law further than its words import. It is not to be construed as ·mak-

---

1. The Probate Reform Act applies to this estate because Mrs. Green passed away after the effective date of the statute, January 1, 1981. D.C. Code § 20–109 (1981).

ing any innovation upon the common law which it does not fairly express." *Martin v. Johnson,* 512 A.2d 1017, 1021 (D.C.1986), citing *Dell v. Department of Employment Services,* 499 A.2d 102, 107 (D.C.1985) (quoting *Shaw v. Merchants' National Bank,* 101 U.S. (11 Otto) 557, 565, 25 L.Ed. 892 (1879)). We agree with the trial court that the Probate Reform Act can be read as fairly expressing legislative intent to abolish the common law doctrine allowing non-judicial disposition of a decedent's estate.

Appellant also argues that construction of D.C.Code § 20–105 should be in light of other provisions dealing with decedents' property, especially D.C.Code § 19–301 (1981). Our further review of the legislative history reveals that the Council of the District of Columbia consciously decided to repeal the common law procedures permitting private disposition of real property and to require the appointment of a personal representative where D.C.Code § 19–301 had previously operated outside of probate. That history not only reveals the care and thoroughness with which the new probate law was developed; it states that real property is to be included "in the probate estate for the first time." *See* Report of the Committee on the Judiciary on Bill 3–91 at 51 (March 12, 1980). Contrary to appellant's contention, this demonstrates that a clear policy decision was made by the Council. Accordingly, the failure to repeal § 19–301, an action apparently deemed unnecessary, *see id.* at 83, does not support appellant's position.

In arriving at its various conclusions, the trial court issued a well-reasoned, comprehensive memorandum opinion which we find to be fully dispositive of this matter on appeal, and which we adopt. (*See* Appendix A.)

*Affirmed.*

1. Relevant portions of the contract are:
   CLIENT(S): Robert L. and Robert J. Green
   MATTER: Estate of Lucille G. Green, Deceased
   THIS AGREEMENT for legal services is between the named Client(s) and the Law Offices of T. Carlton Richardson and relates to and concerns the stated matter. For the compensa-

TERRY, Associate Judge, concurring:

With considerable reluctance, I join in the opinion and judgment of the court. I am very uncomfortable with the notion that private parties may not agree among themselves, without the involvement of a lawyer or the intervention of the probate court, to resolve their claims to an estate to which they are all heirs. This was entirely permissible at common law. When the estate is relatively small, as it is here, the financial burden of going through probate plainly outweighs the supposed benefits of the probate process. In this case, however, the legislative intent to repeal the common law rule is very clear. I therefore have no choice but to vote for affirmance. Appellant's only recourse for future cases is to try to persuade our legislature to enact a statute like the Florida statute which he has cited to us, FLA.STAT.ANN. § 733.815 (West 1976), or the uniform act on which it was based, UNIF.PROBATE CODE § 3–912, 8 U.L.A. 388 (1983).

## APPENDIX A

T. CARLTON RICHARDSON, PLAINTIFF,

v.

ROBERT J. GREEN and ROBERT L. GREEN, DEFENDANTS.

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA CIVIL DIVISION

CIVIL ACTION NO. 7156–82

MEMORANDUM OPINION

In this breach of contract action, plaintiff T. Carlton Richardson, Esq. sues the defendants, Robert J. and Robert L. Green, for professional services rendered pursuant to an attorney's fee agreement.[1] On De-

tion specified below, the attorney agrees to represent the Client(s) to the best of the attorney's ability and to make every reasonable effort to complete the matter at the earliest possible time.
   *Compensation.* The service fee for the initial consultation is *Fifty Dollars ($50.00)* and will be collected at its completion. In determining the

cember 9, 1981, the defendants engaged plaintiff to effect a non-judicial disposition of the Estate of Lucille G. Green, who died intestate September 10, 1981, which estate consisted of an apartment building allegedly worth $150,000. No personal representative of the estate was appointed. Plaintiff prepared a trust deed which purportedly transferred the interests of the heirs [2] of Lucille Green as grantors to Robert J. Green as grantee/trustee. The trust deed was not executed. Plaintiff submitted to defendants an invoice dated February 18, 1982 for services rendered totaling $3008.75, less a $180.00 credit for payments made. When defendants did not pay the balance of $2828.75, plaintiff sued and obtained a summary judgment [3] against Robert L. Green in the amount of $2828.75 plus $424.21 in attorney fees. This Court heard the trial against Robert J. Green.

Plaintiff's complaint initially sounds in contract, i.e., that the defendants breached their contract to pay for plaintiff's services which he performed in drawing up a trust deed and attendant functions in an attempt to non-judicially [4] dispose of Lucille Green's Estate.[5] The defendant's defense is that plaintiff could not render the contracted for services (i.e., a non-judicial disposition of the estate) because D.C.Code § 20–105 (1981) [6] operates to vest legal title to all of a decedent's property at death in the personal representative, making the appoint-

ment of a personal representative a prerequisite to the probate and distribution of the assets of an estate, and that this necessarily negates the concept of a non-judicial distribution. Plaintiff counters that although D.C.Code § 20–105 provides that all property of a decedent shall pass directly to the personal representative, that when none is appointed, non-judicial dispositions are still viable vehicles to dispose of decedent's property. While this is a case of first impression in the District of Columbia, this Court finds from a review of past law, statutory construction, the legislative history of the Act, the statutory scheme and the construction of the analogous Maryland statute, that the appointment of a personal representative is always required to effectuate a distribution of a decedent's estate. This statute abolishes the use of a non-judicial distribution, preventing plaintiff from successfully completing the contracted for services. Plaintiff's case must, therefore, fail for the following reasons:

## Probate Reform Act of 1980

At common law, title to personalty passed to the executors or administrators and title to realty passed by operation of law to the decedent's heirs or devisees, subject to the rights of creditors. 26A C.J.S. *Descent & Distribution* § 66 (1956); Emison, *Recent Developments in Mis-*

---

*base* service fee to be charged in this matter for *ordinary* services rendered, the following arrangement applies:

(x) .... ORIGINATION FEE of *$500.00* to commence services which is non-refundable.

(x) .... FIXED FEE of *$2,500.00* minimum or hourly rates, whichever is greater.

(x) .... HOURLY RATE at *$85.00/$45.00* for in-office services of A. Horrey and staff, respectively.

2. The heirs are her children, Robert J., Richard A., Rodger E., Regina M. Green, Beverly West, and her surviving spouse, Robert L. Green.

3. Plaintiff moved for default judgment against Robert J. Green for failure to answer, which motion was denied due to defective notice. While the Court (Goodrich, J.) granted summary judgment against Robert L. Green, the order setting damages (Hannon, J.) states that "default having previously been entered ... ORDERED, that Judgment by Default in the amount of

*$2828.75* plus attorney's fees ... and costs is entered ... against the defendant, Robert L. Green."

4. Although plaintiff, in his post-trial memorandum, attempts to cloud the issue by referring to a family settlement, the complaint, the language of the trust agreement, and the testimony show that he was engaged to effect a *non-judicial* disposition of the estate.

5. Plaintiff also alleges that but for the defendant's failure to cooperate, the trust would have been executed.

6. The statute reads, in pertinent part:

Section 20–105. Devolution of property at death.

... [A]ll property of a decedent shall be subject to this title and, upon the decedent's death, shall pass directly to the personal representative, who shall hold the legal title for administration and distribution of the estate.

souri: *Probate Code—Real Estate Title Issues,* 49 UMKC L.REV. 531, 563 (1981); Goldsworthy, *Uniform Probate Code—Abolishing the Distinction Between Real and Personal Property in Estate Administration,* 46 N.D.L. REV. 311 (1970); 3 *American Law of Property: A Treatise on the Law of Property in the United States,* § 14.7 (1974). In fact, this continues to be statutory law in most states.[7] *Id.* This situation often impeded the ability of executors and administrators to efficiently administer the estate.

Modern English law, however, beginning with the Land Transfer Act of 1897, and later in the Administration of Estates Act of 1925, has abrogated that country's common law, from which ours derives. Under those acts, title to real estate vested in the personal representative. *Id.;* Goldsworthy, *supra,* at 313. While many states have moved away from the common law rule, few have gone as far as the English.[8] The District of Columbia is one of the jurisdictions which has enacted legislation derogating the common law rule.

## I. *Statutory Construction*

Plaintiff argues that D.C.Code § 20–105, which derogates the common law, should be strictly construed and read in the light of other statutes dealing with the decedent's property, specifically D.C.Code § 19–301 (1981).[9] The latter, the argument goes, operates to vest title to intestate property in the heirs without the necessity of administration. Sections 20–105 and 19–301 read together point to the conclusion that legal title to real estate vests in the heirs at the decedent's death subject to a personal representative being appointed, in which case legal title vests in that person. While plaintiff's argument has certain appeal in that it is in line with prior law and

the current movement away from estate administration, *see* 3 *American Law of Property, supra,* § 14.33 at 706; Muhler, *Intestate Succession Under the Uniform Probate Code,* 3 PROSPECTUS 301 (1970); Wellman, *The Uniform Probate Code: A Possible Answer to Probate Avoidance,* 44 IND.L.J. 191 (1969), this Court must look to the language of § 20–105 and construe its words in accordance with their ordinary meaning, *Tuten v. United States,* 440 A.2d 1008, 1013 (D.C.1982), *aff'd,* 460 U.S. 660, 103 S.Ct. 1412, 75 L.Ed.2d 359 (1983); *Davis v. United States,* 397 A.2d 951, 956 (D.C.1979), in the absence of persuasive reasons to the contrary. *Tuten, supra,* 440 A.2d at 1013. The courts will adopt a construction which harmonizes the provisions of the statute, and where the language is plain, the court will not substitute its judgment for that of the legislature, or give an interpretation other than what is literal, or make an exception where none exists in the language of the statute. 26A C.J.S. *Descent & Distribution, supra,* at § 6. Generally, however, statutes in derogation of the common law must be strictly construed, *Saunders v. First National Realty Corporation,* 245 A.2d 836, 838 (D.C. 1968), *rev'd on other grounds,* 428 F.2d 1071, 138 U.S.App.D.C. 169 (D.C.Cir.), *cert. denied,* 400 U.S. 425, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970); *see also Sierra Pacific Power Co. v. Fed. Power Comm.,* 223 F.2d 605, 96 U.S.App.D.C. 140, 141–142 (D.C.Cir. 1955), *aff'd,* 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956), *opinion amended,* 237 F.2d 756, 99 U.S.App.D.C. 128 (D.C.Cir. 1955) (statute will not be construed as taking away common law right unless the pre-existing right's survival would deprive statute of its efficacy); but laws of descent and distribution are remedial in nature and should be liberally construed. 26A C.J.S. *Descent & Distribution,* § 6, *supra; see*

---

7. Many states, however, have passed legislation which substantially abolishes the distinction between realty and personalty through devices other than the vesting of title to realty in the personal representative. 3 *American Law of Property, supra,* § 14.7 at 578. *See also* Goldsworthy, *supra,* at 112, 316.

8. The States of Georgia, Wisconsin and Maryland have enacted such legislation.

9. The statute reads, in pertinent part:
    Section 19–301. Course of descents generally. The real estate in the District of Columbia, of a deceased person, ... shall descend in fee simple, ... to the surviving spouse, children and other persons in the manner provided by this chapter.

also *Hutchinson Brothers Excavation Co. v. District of Columbia,* 278 A.2d 318 (D.C. 1971) (courts should give liberal interpretation to protective provisions of acts with broad remedial purposes); *but see Coats v. Veedersburg State Bank,* 219 Ind. 675, 38 N.E.2d 243 (Ind.1941) (statute enlarging powers of estate administrator, being in derogation of the common law, must be strictly construed).

Applying these principles of statutory construction to § 20–105, it appears that defendant's interpretation is the most literal. The plain language prescribes that *all* property is subject to the title and passes upon death to the personal representative who will hold legal title. There is no exception [10] for avoiding probate by the heirs, as plaintiff suggests, and the court will not provide one. Moreover, a reading of D.C. Code § 19–301 is in harmony with § 20–105. That is, § 20–105 vests title in the personal representative and § 19–301 tells him how to distribute the property. This reading of the above statutes is not conflicting as plaintiff has urged upon the Court. Plaintiff's view that legal title vests in the heirs unless administration is commenced and a personal representative is appointed is in harmony with the common law mechanism, but is repugnant to the language of the statute and would make an exception that the legislature did not contemplate. This interpretation would also promote disharmony in estate administration in cases where the appointment of a personal representative is delayed and the heirs have disposed of the property in a way inconsistent with the personal representative's plan, or in a manner that would defeat the rights of creditors.

There is a persuasive reason, however, to look beyond the language of the statute into legislative history and the construction of analogous statutes to interpret § 20–105. *Tuten, supra,* 440 A.2d at 1013; *Davis, supra,* 397 A.2d at 956.

## II. *Legislative History*

The probate reform movement in the District of Columbia began in the late 1960s when an *ad hoc* committee of attorneys began to consider the adoption of the Uniform Probate Code (hereinafter cited as the UPC). Wellman, *Recent Developments in the Struggle for Probate Reform,* 79 MICH. L.REV. 501, 535–536 (1981). While the UPC retains the common law feature of title to real property passing to the heirs upon death, it creates a new concept designated as "power over title" whereby the personal representative has the same control over the property as a fee simple owner. Emison, *supra* at 565; Goldsworthy, *supra* at 320–321. The City Council rejected the UPC approach as there was inadequate court supervision over the personal representative and insufficient safeguards for heirs and/or creditors. Statement of Councilmember David A. Clarke, Chairman, Committee on the Judiciary, in response to Council Chairman's Statement on Bill 3–91 (April 22, 1980); Wellman, *Recent Developments in the Struggle for Probate Reform, supra* at 537–545. The resultant Probate Reform Act was a much more court-supervised piece of legislation than that originally envisioned. *Id.* at 539. The major reforms of the Act are

1) to promote the prompt initial appointment and grant of authority to the personal representative of the decedent; 2) to reduce the time and expense of administering decedent's estate; 3) to advance the personal representative's expeditious marshalling of assets and payment of all just claims against an estate; [and] 4) to provide procedural protection to interested parties when needed....

Council of the District of Columbia Report, Bill 3–91, the District of Columbia Probate Reform Act of 1980, March 12, 1980, at 1 (hereinafter cited as Report). Other needed reforms addressed by the Act are

2. to provide a simplified and expeditious method for admitting wills to probate and for the appointment of a

---

10. The only exception to § 20–105 is D.C.Code § 20–357 (1981) which provides that if the property of the decedent is not more than two cars, the mayor may transfer title to same and administration of the estate may be dispensed with.

personal representative of the decedent's estate ...

4. to provide a procedure for administration that would be substantially unsupervised by the court (Informal Administration) which would be available only with the consent of the residuary beneficiaries and which would limit the liability of the personal representative to the value of the assets under his control ...

6. to include both real and personal property in the administration estate.

*Id.* at 4. The section-by-section analysis states that § 20–105 vests legal title to all decedent's property in the personal representative until it is disposed of or distributed. *Id.* at 9.

Thus, the legislative history shows that the City Council, in rejecting the more loosely court-supervised approach of the UPC, in citing as a major reform the prompt, initial appointment and grant of authority to the personal representative, as well as in providing procedural protection for interested parties, intended to require the appointment of a personal representative in all cases. Even informal, unsupervised administration, per the legislative history, implicates that appointment of a personal representative. Devolution of title upon the heirs may thwart the goal of expeditious payment of all just claims because creditors may not receive notice of the decedent's demise.

Judge Virginia Riley, while Chairperson of the Probate and Trust Law Committee of the D.C.Bar, testified on July 21, 1977 before the D.C.City Council regarding the proposed Probate Reform Act. Her testimony is particularly noteworthy as it was her committee that was responsible for drafting the bill which ultimately resulted in the Probate Reform Act. Among the purposes of the legislation cited were to ... [p]ermit informal administration of estates if all interested persons consent;

[and] [i]ncrease the powers of the personal representative over both real and personal property, reducing the need for obtaining specific court authority in many cases....

Amending the District of Columbia Code with respect to Probate and Fiduciary Relationships, Council Bills 2–37, 2–61 and 2–135, D.C.City Council, July 21, 1977 (testimony of Virginia Riley), at 10.

The section-by-section analysis states the purpose of § 20–105 (referred to as § 20–106 in the analysis), as plaintiff correctly notes, is to eliminate the distinction between real and personal property to facilitate the administration of the estate.[11] This purpose, however, does not militate against this Court's view that the result of the reform requires a personal representative in all cases. In fact, the analysis of § 20–526 Termination [of Personal Representative] bolsters it.

Title to all District of Columbia real estate and leasehold property will *automatically* vest in the personal representative.... As ancillary administration has been abolished and the title to real estate no longer passes directly to the heir or legatee, ... this section adequately protects the beneficiary of the real estate as well as creditors.

*Id.* at Exhibit A, p. 7 (emphasis added).

Informal administration is described as a procedure where the personal representative is not required to file inventories and accounts with the court upon written consent of all interested persons. *Id.* at Testimony, p. 11–12. This procedure has been utilized for years in the District of Columbia and other jurisdictions for the administration of trusts. *Id.* at Exhibit A, p. 10. Although this section was changed when codified, the purpose and language indicate that even the informal process requires a personal representative. *See also* Before the Committee on the Judiciary, Council

---

11. "[D]uring the early stages of administration, the heirs or legatees of real estate are frequently not ready to assume the responsibility of managing their property, and as a practical matter, the personal representative is often required to collect the rents, pay taxes and expenses, make repairs, prevent waste and provide insurance coverage.... Yet, the personal representative may not have even an insurable interest." Testimony of Virginia Riley, *supra,* at Exhibit A, p. 2–3.

Bill 2-135, D.C.City Council, July 21, 1977 (testimony of Michael F. Curtin, former Deputy Register of Wills for the District of Columbia).

### III. *Statutory Scheme*

The Court's construction of § 20-105 is also guided by a consideration of the statutory scheme. *See generally Sierra Pacific Power Company, supra.* D.C.Code § 20-301 prescribes that the opening of an estate begins with the filing of a petition which results in the probate of a will or the determination of intestacy *and* the appointment of a personal representative. Probate occurs either through an abbreviated probate proceeding, a standard probate proceeding, or a small estates proceeding. D.C.Code § 20-301 (1981). "An abbreviated probate proceeding is [one] for the probate of a will or a determination of intestacy *and* for the appointment of a personal representative." D.C.Code § 20-311 (1981) (emphasis added); "[a] standard probate proceeding is [one] for the probate of a will or a determination of the decedent's intestacy *and* for the appointment of a personal representative." D.C.Code § 20-321 (1981) (emphasis added). "Any person eligible for appointment as the personal representative ... may file a ... petition for administration of a small estate," D.C.Code § 20-352 (1981), which is an estate with a value of $10,000.00 or less. D.C.Code § 20-351 (1981). Thus, the Code explicitly states that each of the statutory methods for beginning the administration of an estate, whether testate or intestate, requires someone to petition the court for the appointment of a personal representative. *See also* Report at 14-17, 23-27.

D.C.Code § 20-505 states that a personal representative's power and duties commence with the issuance of letters of administration.

> It is important to note that a personal representative who acts prior to the issuance of letters and *any person other than the personal representative who acts on behalf of the estate does so at his or her risk.* Section 20-505 provides that acts which by statute are authorized to be done by a presonal (sic) representative without court approval after issuance of letters but which in fact were done in good faith prior to issuance of letters shall have the same effect as if occuring after the issuance of letters. Moreover, a personal representative may ratify acts done by another on behalf of the estate if the personal representative is authorized to do such acts.

*Id.* at 35-36 (emphasis added). D.C.Code § 20-901 provides that no claims against a decedent's estate may be revived or begun before the appointment of a personal representative. As one of the major reforms of the Act is "to advance the personal representative's ... payment of all just claims against an estate," *id.* at 1, it seems that § 20-901 also mandates the appointment of a personal representative which is consistent with the automatic passing of legal title in all cases.

Reading these provisions together with either a strict or liberal constructionist view, it is clear that the personal representative is an essential operative in closing any estate. The fact that the drafters recognized the liability of those other than the personal representative, or the personal representative acting prior to the issuance of letters, shows that they contemplated situations where formal requirements are not met and disfavored them. Most importantly, "no person shall exercise the powers or assume the duties of a personal representative unless he has been appointed by the Court." D.C.Code § 20-302(b) (1981). Given that a personal representative's primary function is to distribute the estate in the most favorable manner for the benefit of the heirs, which is ostensibly what plaintiff attempted in drawing up a trust agreement, it is arguable that the above statutory prohibition proscribes the very type of transaction attempted by plaintiff in the instant case. The statutory scheme shows the legislature's concern for the protection of interested parties, vis-a-vis court supervision, which manifests in part, in the provisions for the appointment of a personal representative.

### IV. *Maryland Law*

Maryland law, after which the Probate Reform Act was modeled, testimony of Mi-

chael Curtin, *supra* at 4; testimony of Virginia Riley, *supra* at 9, is also instructive. Maryland's statute, Md.Est. & Trusts Code Ann., § 1–301 (1974), states that

> [a]ll property of a decedent shall be subject to the estates of decedents law, and upon his death shall pass directly to the personal representative, who shall hold the legal title for administration and distribution without any distinction, preference, or priority between real and personal property.

The comment to that statute, which centers on the impracticality of the distinction between real and personal property in the estate administration, concludes that

> [t]he new statute rejects the concept of the new Uniform Probate Code that title to all property passes directly to the heirs or legatees subject to the power or control over the property by the personal representative. This dichotomy between title, on the one hand, and power, on the other, is unworkably vague and unnecessarily inconvenient. On the contrary the suggested wording of *Section 1–301 makes it clear that the title to all property both real and personal, and as to both testate and intestate estates, shall pass directly to the personal representative.*

Md.Est. & Trusts Code Ann., § 1–301 (1974), comment to former Article 93, § 1–301 (emphasis added). This comment supports plaintiff's view to the extent it shows that a primary goal of legislation devolving legal title to realty upon the personal representative is administrative ease. The emphatic language stating that no exception regarding the passage of title exists, combined with the fact that D.C.Code § 20–105 tracks the Maryland statute very closely and that the City Council also rejected the UPC concept, bolsters the defendant's argument.

In *Resh v. Resh*, 271 Md. 133, 314 A.2d 109 (Md.1974), a guardian *pendente lite* brought an action on behalf of an incompetent to set aside certain real estate conveyances. Prior to the trial of the matter, the incompetent died; no personal representative was appointed. The trial went forward and the trial court set aside the conveyances. The Court of Appeals of Maryland, noting that the guardianship expired at death, that pursuant to Md.Code Ann. Art. 93, § 1–301 (predecessor to Estates & Trusts Article, § 1–301) title to real property devolved upon the personal representative, that none had been appointed, and remanded the case to the trial court for the addition of the proper party, i.e., the personal representative. *Id.*, 314 A.2d at 112–113. This holds that no action may be taken on behalf of an estate where no personal representative has been appointed.

In short, the plain language of § 20–105, the legislative history, the statutory scheme and construction, and Maryland law all point to the conclusion that any action respecting a decedent's property requires the appointment of a personal representative pursuant to D.C.Code § 20–105, and that non-judicial dispositions are abolished.

### Legal Service Agreement

The legal service agreement, *infra* at note 1, states that for the agreed upon compensation the plaintiff agreed to represent the client to the best of his ability. While the contract terms do not explicitly state that the object of the contract is to draw up and execute a non-judicial disposition of the estate, it does state that the matter concerned the Estate of Lucille G. Green. The trust deed cites the aforementioned as its purpose, and it is undisputed that the agreement encompassed the conclusion of an estate through the operation of a trust. As the law seeks to carry out the probable intent of the parties as gathered from the nature, scope of the agreement, *Connelly v. Methodist Home of District of Columbia*, 190 A.2d 550 (D.C.1963), and from the attendant circumstances, *Ottenberg v. Ottenberg*, 194 F.Supp. 98 (D.D.C.1961), this Court finds that the parties intended that a non-judicial disposition be made.

Among the circumstances aiding in contract construction are the statutes, common law rules, and constitutions subsisting at

the time of the contract. 3 CORBIN ON CONTRACTS § 551 (1960 & 1984 Supp.); 4 WILLISTON ON CONTRACTS § 615 (1961). In fact, these laws enter into and form a part of the contract as if they were expressly referred to and incorporated in its terms. *Maryland-National Capital Park and Planning Commission v. Lynn*, 514 F.2d 829, 833, 168 U.S.App.D.C. 407 (D.C.Cir.1975); *Javins v. First National Realty Corp.*, 428 F.2d 1071, 1081, 138 U.S.App.D.C. 369, 379 (D.C.Cir.), *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970); *Wright v. Commercial and Savings Bank*, 297 Md. 148, 464 A.2d 1080, 1083 (1983); *State of Maryland, Department of General Service v. Holtman & Assoc., Ltd.*, 296 Md. 403, 463 A.2d 803, 807 (1983); *Denice v. Spotswood I. Quinby, Inc.*, 248 Md. 828, 237 A.2d 4, 7–9 (1968); *see also Hooton v. Kenneth B. Mumaw Plumbing and Heating Co., Inc.*, 271 Md. 565, 318 A.2d 514, 517 (1974) (building code may be implied condition of contract); *Denice, supra*, 237 A.2d at 6–7 (building code is implied condition of contract). Therefore, in order to have made a valid trust agreement, all applicable statutes must have been complied with as if they had been made explicit contract terms. As per this Court's finding that D.C.Code § 20–105 requires the appointment of a personal representative to effectuate any transaction respecting a decedent's estate, plaintiff could not effectuate a non-judicial disposition as agreed.

It is well settled that when the performance of a contract is legally impossible at the time the contract is made, the contract is null and void. 17 C.J.S. *Contracts* § 98 (1963); 17A C.J.S. *Contracts* § 462 (1963); 18 WILLISTON ON CONTRACTS § 1933 (1978); 6 CORBIN ON CONTRACTS § 1326 (1962); *see also Transatlantic Financing Corp. v. United States*, 363 F.2d 312, 124 U.S.App.

D.C. 183, 191 (D.C.Cir.1966) (when the performance of a contract is impossible, the contract is a nullity). The Court finds that because the purpose of the contract was to non-judicially dispose of the decedent's estate which is not legally possible based on D.C.Code § 20–105, the contract is null and void, and the defendant is under no duty to pay the legal service fees.[12]

Accordingly, defendant will prepare an appropriate order dismissing plaintiff's case with prejudice.

/s/ John D. Fauntleroy
JOHN D. FAUNTLEROY
Judge

July 30, 1985
DATE

---

12. While the plaintiff may have performed certain services in connection with drawing up the trust deed, he may not recover in *quantum meruit* because his acts were worthless and defendant received no value. *Marshall v. B & O Railroad Co.*, 57 U.S. (16 How.) 953, 14 L.Ed. 953 (1853); *see also Moschetta v. Cross*, 241 F.Supp. 347, 349 (D.D.C.1964) (value of services

measured in *quantum meruit* relates to value to defendant); CORBIN, *supra* at § 1367. Moreover, as rendering the services was "for the compensation specified," *infra* note 1, including a non-refundable origination fee, which services were not performed, the plaintiff cannot recover for the non-refundable fee.