Evelyn Patricia MARTIN, et
al., Appellants,

v.

Nancy Jane JOHNSON, et al.,
Appellees.

No. 85–1287.

District of Columbia Court of Appeals.
Argued May 15, 1986.
Decided July 30, 1986.

Philip L. O'Donoghue, Chevy Chase, Md., for appellants.

Matthew A. Kane, Washington, D.C., for appellees Johnson, Blum and Barnes.

Stanley A. Racoosin, Silver Springs, Md., filed a brief for appellee Abrams, Personal Representative of the Estate of Mary C. Connor.

Before PRYOR, Chief Judge, and BELSON and ROGERS, Associate Judges.

PRYOR, Chief Judge:

This case involves application of the common law doctrine of exoneration to construction of the Last Will and Testament of decedent Mary C. Connor (Decedent). Leonard Abrams, Decedent's personal representative (personal representative), filed a complaint in the Probate Division of Superior Court for construction of Decedent's will. In his complaint, the personal representative requested the trial court to rule that the common law doctrine of exoneration was applicable to the deed of trust loan on real property devised by Decedent to Evelyn Patricia Martin, and necessitated that the property pass to Mrs. Martin free of the encumbrance. The residuary legatees under Decedent's will opposed this request, arguing, in the alternative, that the common law doctrine of exoneration had been abolished in the District of Columbia, and that even if not abolished, the doctrine was inapplicable under the facts of this case.

After cross-motions for summary judgment were filed, the trial judge ruled that the common law doctrine of exoneration was still in effect in the District of Columbia, but that the doctrine was not applicable under the facts of this case. Finding error in the trial judge's ruling, we reverse.

I

A.

This case came before the trial court on stipulated facts. Mary C. Connor, a resident of the District of Columbia, died on October 5, 1982, leaving a Last Will and Testament dated March 3, 1967. At issue in this case are two provisions of Decedent's will, which was drafted by her attorney, Leonard Abrams. In Item II of her will, Decedent bequeathed her residence, and its contents, to her niece, Evelyn Patricia Martin, as follows:

I hereby give, devise and bequeath my home at 2908 University Terrace, N.W., Washington, D.C., together with all of the furniture and furnishings contained therein to my niece, Mrs. Evelyn Patricia Martin ... absolutely and in fee simple.

In Item III of her will, Decedent bequeathed "all the rest and residue" of her estate, "both real and personal of whatever kind and wheresoever situated" in three equal parts to nieces Nancy Jane Johnson and Beverly Rae Blum, and nephew Donald Ray Barnes (residuary legatees).[1]

At the time she executed her will, Decedent owned her residence at 2908 University Terrace, N.W., in fee simple, free and clear of encumbrances. Decedent's primary source of support at the time she executed her will were two civil service annuities. In addition, Decedent had $5,000 to $10,000 in checking and savings deposits with local thrift institutions, and Series E Savings Bonds with a face value of $1,325.[2]

Decedent was aware at the time she executed her will that the home and furnishings at 2908 University Terrace comprised the vast bulk of her estate. It is stipulated that of the children of Ernest Ray Barnes, Evelyn Patricia Martin, to whom Decedent bequeathed her home, was her favorite.

---

1. In addition, Decedent appointed Leonard Abrams to be her personal representative.

2. Decedent also had tangible personal property, as well as a one-fifth undivided interest as a residuary legatee in the remainder after a life estate under the Last Will and Testament of George W. Barnes.

During the 1970s, Decedent continued to reside at her home at 2908 University Terrace, and support herself on the two civil service annuities and the cash and earnings in her savings and checking accounts. Even before her serious illness in the late 1970s, Decedent's needs for support typically exceeded her annuity payments and the interest on her accounts. Throughout this period, Leonard Abrams remained Decedent's attorney and was responsible for preparing her tax returns.

In the late 1970s, Decedent's health declined. By 1979, Decedent had developed Parkinson's disease and sustained a broken hip, rendering her bedridden and in need of constant nursing care. In 1979, and after, Decedent's needs were taken care of by an individual who lived with Decedent in her residence and performed cleaning, cooking, physical care, and other support services.

The costs of Decedent's care in the late 1970s were such that she quickly began to deplete her liquid assets. At this time, Mr. Abrams suggested that Decedent sell her residence and move into a nursing home. Despite Mr. Abrams' urgings, she refused. On each occasion that Mr. Abrams raised the issue, Decedent told him that she was determined to stay at her residence.

In 1981, Decedent gave Eveyln Patricia Martin a power of attorney to make transactions on her checking account. Mrs. Martin wrote checks and made payments on behalf of Decedent until the date of her death in 1981. Of the children of Ernest Ray Barnes, Mrs. Martin remained Decedent's favorite during the last years of her life, and was the one in closest contact with her until her death.

By the summer of 1981, Decedent's cash reserves were fully depleted. As a result, Decedent had either to sell her residence, or obtain another source of funds. Acting on her strong desire to remain at her home, Decedent decided to obtain a loan secured by a deed of trust on her residence, and use the funds thus obtained for her support.

On September 24, 1981, Decedent obtained a loan from Unity Mortgage Corporation (Unity) in the amount of $50,000 at a rate of 17.875 percent interest.[3] As a condition of the loan, Unity required that Evelyn Patricia Martin, and her husband, Francis Martin, co-sign the deed of trust note. In addition, the lender required that the Martins have an interest in the property and sign the deed of trust itself. Prior to execution of the deed of trust, therefore, a one percent interest in the property at 2908 University Terrace was conveyed to the Martins. Despite their one percent ownership in the property, the Martins did not obtain any income from, or enjoy in any way a beneficial interest in, Decedent's residence.

The proceeds of the loan were held in Decedent's bank accounts and used exclusively for the benefit of Decedent. In particular, funds were used to pay $300 per week to the individual caring for Decedent, and to make monthly payments on the loan of $748.44.

Decedent lived at her residence until she entered the hospital for her last illness on October 2, 1982. Decedent remained mentally acute up to the time of her last illness.

At the time of Decedent's death on October 5, 1982, the assessed value of her residence at 2908 University Terrace, N.W., was $140,310.00. The principal balance on the loan from Unity as of that date was $49,952.44. The amount of the proceeds remaining from the loan were $23,812.76. Following Decedent's death, the personal representative continued for 25 months to make monthly payments of $748.44 on the Unity loan. As of December 1, 1984, these 25 payments totalled $18,711.

As of July 1, 1984, the closing date of the second account of Decedent's estate, the value of Decedent's personal estate was $51,797.40.

### B.

In his complaint for construction of Decedent's will, the personal representative re-

---

3. After deduction of points and settlement costs, the proceeds of the loan were $46,701.87.

quested a declaration by the court that, "in the absence of a contrary intention of the testatrix clearly stated in the Will, the doctrine of exoneration applicable in the District of Columbia commanded that the real property devised by the decedent pass free of the ... indebtedness." Further, the personal representative explained that Evelyn Patricia Martin had disclaimed her interest in the 2908 University Terrace property in favor of her children (the Martin children).[4]

In their answer to the complaint, the Martin children supported the personal representative's position on exoneration of the encumbrance on the 2908 University Terrace property.

The residuary legatees answered the personal representative's complaint, asserting first that the doctrine of exoneration is inapplicable to the encumbrance on 2908 University Terrace because Decedent's will contained no "pay all debts" clause. Further, the residuary legatees argued that the Probate Reform Act of 1980, D.C.Code § 20–101 *et seq.* (1981) (Probate Reform Act), abolished the common law doctrine of exoneration in the District of Columbia. Based on these contentions, the residuary legatees requested that the 2908 University Terrace property pass to the Martin children subject to the deed of trust note encumbering it. Further, the residuary legatees cross-claimed against the Martin children, and counter-claimed against the personal representative, for return of payments made on the deed of trust note following Decedent's death.

The case came before the trial judge on motions for summary judgment by all parties. In her order, the trial judge rejected the residuary legatees' contention that the Probate Reform Act had abolished the doctrine of exoneration in the District of Columbia. The trial judge did conclude, however, that the doctrine of exoneration was inapplicable under the facts of this case. On this basis, the court ordered that the 2908 University Terrace property pass to the Martin children subject to the deed of trust note, and directed that defendant Evelyn Patricia Martin pay the estate an amount equal to the total of payments made by the personal representative to Unity following Decedent's death. This appeal followed.

## II

We first consider the residuary legatees' claim that the Probate Reform Act abolished the doctrine of exoneration for persons dying after January 1, 1981, the effective date of the Act. In support of this claim, the residuary legatees point first to provisions of the Probate Reform Act which make all property of a decedent subject to the control of the personal representative, *id.* § 20–105, and eliminates preferences (subject to certain exceptions) between real and personal property for the payment of debts. *Id.* § 20–106. In addition, the residuary legatees assert that D.C.Code § 20–903(a) abolishes the doctrine of exoneration by establishing procedures to be followed by creditors in obtaining payment from the estate on a secured debt. *Id.*[5] Based on these provisions, the

---

**4.** These children are Catherine M. Narup, Patricia M. Dodd, G. Christopher Martin, Patricia Martin, F. Gregory Martin, and Timothy S. Martin.

**5.** D.C.Code § 20–903 provides:

(a) *Requirement of presentation; time, limitation.*—Except as otherwise expressly provided by statute with respect to claims of the United States and the District of Columbia, (1) all claims against a decedent's estate, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or other legal basis, shall be barred against the estate, the personal representative,

and the heirs and legatees, unless presented within 6 months after the date of the first publication of notice of the appointment of a personal representative; and (2) all claims against the estate based on the conduct of or a contract with a personal representative shall be barred unless an action is commenced against the estate within 6 months of the date the claim arose.

(b) *Liens not affected.*—Nothing in this section shall affect or prevent any action or proceeding to enforce any mortgage, pledge, judgment, or other recorded or otherwise per-

residuary legatees claim that "the common law doctrine of exoneration has been abrogated as clearly and completely as possible in the District of Columbia." We disagree.

■ In considering the residuary legatees' argument that the Probate Reform Act abolishes the common law doctrine of exoneration, we are guided by the well established principle that

> [n]o statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express.

*Dell v. Department of Employment Services,* 499 A.2d 102, 107 (D.C.1985) (quoting *Shaw v. Merchants' National Bank,* 101 U.S. (11 Otto) 557, 565, 25 L.Ed. 892 (1879)); *see also Saunders v. First National Realty Corp.,* 245 A.2d 836, 838 (D.C.1968), *rev'd on other grounds sub nom. Javins v. First National Realty Corp.,* 138 U.S.App. D.C. 369, 428 F.2d 1071, *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970). Here, the D.C. Code provisions cited by the residuary legatees do not mention—let alone explicitly abolish—the common law doctrine of exoneration. Thus, we find no explicit repeal of the doctrine of exoneration in the Probate Reform Act.

Moreover, we find no basis for concluding that the provisions of the Probate Reform Act cited by the residuary legatees "fairly express" the Council's intent to abolish the common law doctrine of exoneration. Indeed, scrutiny of these provisions reveals that they do not even bear directly on the issue addressed by the doctrine.

■ As more fully discussed below, *see* § III, *infra,* the doctrine of exoneration provides direction as to whether liens on real property which is subject to a specific devise, for which a decedent was personally obligated, are to pass with the property, or be discharged at the expense of the residuary legatee or distributee of the decedent's personal estate. D.C.Code §§ 20–105 and –106 generally abolish the distinction be-

fected security interest on property of the

tween real and personal property for the payment of debts. These provisions do not indicate, however, whether the specific devisee of property subject to a lien, or the general legatee of personalty (or residuary legatee), bears responsibility for discharging the debt encumbering the realty. Similarly, D.C.Code § 20–903(a) is unilluminating. That provision establishes procedures to be followed by a secured creditor in obtaining payment on a debt from the estate. D.C.Code § 20–903(a) is irrelevant to exoneration, however, because the doctrine pertains to the rights of one who receives specifically devised real property—not those of a secured creditor.

Because the D.C.Code provisions cited by the residuary legatees do not bear on the issue addressed by the doctrine of exoneration, we find no basis for concluding that these provisions abolish the doctrine in this jurisdiction.

### III

We come then to appellants' contention that the trial judge erred in finding the doctrine of exoneration inapplicable under the facts of this case. For the reasons stated below, we agree.

■ The common law doctrine of exoneration provides generally that in the absence of controlling statutory provisions, or the expression of any contrary intention on the part of the testator, liens on specifically devised real property for which decedent was personally obligated, are to be discharged at the expense of the residuary legatee or distributee of the decedent's personal estate. *See generally Sheehy v. O'Donoghue,* 68 App.D.C. 127, 129, 94 F.2d 252, 254 (1937); *Union Trust Co. v. Brendlinger,* 59 App.D.C. 294, 296, 40 F.2d 806, 808 (1930); *Tracy v. Atwell,* 58 App.D.C. 397, 398, 32 F.2d 392, 393 (1929); *O'Meara v. Shreve,* 58 App.D.C. 220, 222, 26 F.2d 998, 1000 (1928); *In re Tunison's Estate,*

estate.

75 F.Supp. 573, 574 (D.D.C.1948).[6] Further, it has been repeatedly recognized as "well settled that the common law rule of exoneration is in effect in the District of Columbia." *Sheehy v. O'Donoghue, supra,* 68 App.D.C. at 129, 94 F.2d at 254.

We observe that the rule of exoneration operates only in the absence of an expression of intent by the decedent. Indeed, where the decedent's intent is discernible—either through the content of the will or surrounding circumstances—the rule of exoneration has no application. *See, e.g., id.* at 129, 94 F.2d at 254 (doctrine of exoneration held inapplicable where will of testatrix revealed "her intent that the devisee ... take only her equity in the property devised"). A leading authority explains:

> The effect of testator's intention, as expressed in the will, may be to make it clear that he wishes the debt to be paid out of the personalty, in accordance with the rule of law, in which case such intention adds nothing to the law, and does not change the result that would have been reached without the will; or it may be to show that testator does not intend to have such debt paid out of the personalty, in which case his intention changes the result that would otherwise have been reached.

6 W. BOWE, D. PARKER, *supra,* § 52.17 (footnote omitted). Thus, the threshold question presented in a case involving the doctrine of exoneration is whether the intent of the decedent is discernible. This determination is to be made by looking at the " 'four corners' of the will, taken in its entirety, supplemented as necessary by extrinsic facts." *Scott v. Thropp,* 385 A.2d 1144, 1146 (D.C.1978); *see also In re Estate of Glover,* 150 U.S.App.D.C. 147, 463 F.2d 1238 (1972).

It is true, as the trial judge noted, that certain facts in this case suggest that Decedent's intent was that the property devised to Evelyn Patricia Martin pass subject to the debt encumbering it. The fact that Mrs. Martin was a one percent owner of the devised property, and a co-signer of the deed of trust note, suggests an intent that the property devised to her pass subject to the encumbrance. *Cf. Sheehy v. O'Donoghue, supra,* 68 App.D.C. at 130–31, 94 F.2d at 254–56 (intent that devised property pass subject to encumbrance found where, among other factors, testator and devisee owned property jointly as business venture, with costs and profits divided equally between them).

Moreover, the absence of a "pay all debts" clause in Decedent's will can be fairly read to manifest her intent that the residuary estate not bear the burden of extinguishing the debt on the devised real property. *See Tracy v. Atwell, supra,* 58 App.D.C. at 398, 32 F.2d at 393 (intent that debt on devised property be paid from residue found in "pay all debts" clause in will); *O'Meara v. Shreve, supra,* 58 App.D.C. at 221, 26 F.2d at 999 (same).[7]

6. A leading treatise defines the doctrine of exoneration as follows:

> If a debt which testator owes personally in his lifetime is secured by a mortgage or other lien upon specific property belonging to testator, such debt, like any other personal debt is to be paid out of testator's personal estate in the absence of provisions in the will which show a contrary intention; and, as between the devisee or legatee of the property which is subject to such lien, and a general legatee to whom all the personalty is given, or a residuary legatee or next of kin, the debt must be paid out of the personalty.

6 W. BOWE, D. PARKER, PAGE ON WILLS § 52.16 (1962) (footnote omitted).

7. The significance of a "pay all debts" clause is a matter of dispute, however:

> As is the case in questions of charging debts generally the courts have differed as to the effect of a general direction to pay debts. A number of courts have held that such a direction includes debts which are secured by a lien and that it tends, at least, to show that testator intends that such debts shall be paid out of his general estate. Some courts have held that these are words of pure form; and that they do not show the testator intends that the debt which is secured by lien or encumbrance shall be paid out of his general estate.

6 W. BOWE, D. PARKER, *supra,* § 52.20 (footnotes omitted).

Having recognized these factors, however, it is equally true that other aspects of this case strongly suggest Decedent's intent that the real property devised to Mrs. Martin pass free of the debt encumbering it. First, it is undisputed that the deed of trust note in this case was a personal debt of Decedent, and that the proceeds of the loan benefitted Decedent's personal estate. In *Sheehy v. O'Donoghue, supra,* 68 App. D.C. at 130, 94 F.2d at 255, the court found it "unreasonable to suppose that the testatrix intended to strip the rest of her estate in order to clear the property of an encumbrance which represented a joint business obligation, and for the full amount of which the devisee was equitably personally liable." *Id.* The court explained, however, that the result might very well have been different had the debt been a personal one:

> "the reason ... for throwing such a mortgage upon the personalty, is that the personal estate has been benefited by the making of the mortgage." This is true in a case where the debt secured by the mortgage is solely a personal obligation. On the other hand, where the obligation is of a completely different character, as in the present case, the reason for the rule disappears and it is inequitable to apply it.

*Id.* at 130–31, 94 F.2d at 255–56 (citation omitted); *see also Union Trust Co. v. Brendlinger, supra,* 59 App.D.C. at 295–96, 40 F.2d at 807 (intent of testatrix that devised real estate pass free of encumbrance shown, among other things, by fact that debt a personal one); *Tracy v. Atwell, supra,* 58 App.D.C. at 398, 32 F.2d at 393 (same).

Further, it is stipulated in this case that, throughout the period in question, Mrs. Martin was Decedent's "favorite," and the person in closest contact with her until the time of her death. Such an attitude of "extreme benevolence" has been repeatedly recognized as suggestive of the intent that devised real property pass free of encumbrances. *See, e.g., Union Trust Co. v. Brendlinger, supra,* 59 App.D.C. at 296, 40 F.2d at 808; *O'Meara v. Shreve, supra,* 58 App.D.C. at 221–22, 26 F.2d at 999–1000; *compare Sheehy v. O'Donaghue, supra,* 68 App.D.C. at 130, 94 F.2d at 255 (intent that devised property pass subject to encumbrance found where, among other factors, devisee was business partner and there was no attitude of extreme benevolence between them).[8]

Finally, it is significant that the lien on Decedent's real property was placed after execution of her will. In this regard, it has been noted that a testator's "affirmative intention to have [the debt] paid out of the personalty is most likely where the encumbrance was created after the will was made...." 6 W. BOWE, D. PARKER, *supra,* § 52.17 (footnote omitted). The timing of the lien in this case, therefore, is yet another factor suggesting Decedent's intent that the devised property pass free of the encumbrance.

A review of the salient factors in this case, therefore, yields no clear picture of whether Decedent intended that the real estate devised to Mrs. Martin pass subject to—or free of—the deed of trust loan encumbering it. It is in precisely such a circumstance that the common law rule of exoneration is operative, and directs that the debt on the specifically devised real property be discharged at the expense of the general residuary gift of Decedent's personal estate. Accordingly, we hold that the trial judge erred in finding the doctrine

---

8. The close relationship between Decedent and Mrs. Martin also mitigates the significance of Mrs. Martin's role as one owner of the property and co-signer of the deed of trust note. It is clear from the facts in this case that Mrs. Martin assumed responsibility as co-signer on the deed of trust note solely as a favor to Decedent. Further, Mrs. Martin accepted a one percent ownership interest in the property only when required to do so by Unity, and with no intention of reaping material gain. Thus, under the facts of this case, Mrs. Martin's role as co-signer of the deed of trust note and one percent owner of the property bolsters the perception of her as Decedent's "favorite," and does not strongly support the inference that Decedent intended that the property pass to her subject to the encumbrance.

of exoneration inapplicable under the facts of this case, and direct that an order consistent with this opinion be entered.[9]

*Reversed.*

---

**9.** In so holding, we do not consider whether, in light of the Probate Reform Act, the doctrine would operate to require exoneration of a debt on specifically devised personalty at the expense of a general residuary gift.