Nancy Jane JOHNSON, et al.,
Appellants,

v.

Evelyn Patricia MARTIN, et
al., Appellees.

No. 87–1205.

District of Columbia Court of Appeals.

Argued May 23, 1989.
Decided Dec. 21, 1989.

Matthew A. Kane for appellants.

Philip L. O'Donoghue, with whom Julia L. O'Brien was on the brief, for appellees Evelyn Patricia Martin, et al.

· Stanley A. Racoosin, with whom Jack C. Sando was on the brief, for appellee Leonard Abrams.

Before TERRY and STEADMAN, Associate Judges, and PRYOR, Senior Judge.

TERRY, Associate Judge:

This case comes before us for the second time. The relevant facts are set forth in our prior opinion, *Martin v. Johnson*, 512 A.2d 1017 (D.C.1986) (*Martin I*), and we summarize them here only briefly. In her will Mary Connor left her home on University Terrace, N.W., which was then encumbered by a deed of trust, to her niece, Evelyn Patricia Martin. Mrs. Martin in turn disclaimed her interest in the property in favor of her children ("the Martin children"), who, along with their mother, are appellees here and were appellants in the first appeal. The residuary legatees, appellants in the instant appeal and appellees in the first appeal, contended in *Martin I* that the common law doctrine of exoneration did not apply and, as a result, that the debt on the University Terrace property could not be discharged at the expense of the residuary estate. This court disagreed and held in favor of the Martin children.

While the appeal in *Martin I* was pending, a buyer was found for the house on University Terrace. The personal representative, Leonard Abrams, agreed to distribute the property to the Martin children on the condition that, when the property was sold, the net proceeds would be used to pay the principal and accrued interest owed on the deed of trust note, and that $40,000 of the proceeds would be placed in escrow pending the outcome of the appeal. On remand after our decision in *Martin I*, the residuary legatees argued before the trial court that the proceeds from the sale of the house should be used to pay the principal amount owed on the deed of trust, but not the accrued interest. They also filed an exception to the third accounting of the personal representative, claiming that the residue of the estate should not be charged for expenses incurred in maintaining the house before it was sold, *viz.*, real estate taxes, utility bills, insurance premiums, and sundry repairs.[1] They further contended that even if these maintenance expenses were properly to be charged against the residue, the personal representative breached his fiduciary duty by neglecting to rent the house during his administration of the estate or, in the alternative, by failing to sell the house sooner than he did.

The trial court held that both the principal and the interest on the note were to be paid from the residue of the estate. The court also ruled that the expenses to which the residuary legatees took exception were proper administrative expenses and, as such, were chargeable to the residue. We affirm both of these rulings. We remand the case to the trial court, however, for consideration of a matter on which it has not yet ruled: the residuary legatees' assertion that the personal representative breached his fiduciary duty by neither renting the house nor selling it in a timely manner.

## I

▮ In *Martin I* this court said:

A review of the salient factors in this case, therefore, yields no clear picture of

---

1. In their exception to the third accounting, appellants asked the trial court to order appellees to reimburse the estate for sewer and water bills totaling $194.53, gas bills of $2,490.57, electric bills of $374.11, insurance premiums of $542.00, real estate taxes of $3,957.70, and $46.30 worth of repairs.

whether Decedent intended that the real estate devised to Mrs. Martin pass subject to—or free of—the deed of trust loan encumbering it. It is in precisely such a circumstance that the common law rule of exoneration is operative, and directs that *the debt* on the specifically devised real property [*i.e.,* the home on University Terrace] be discharged at the expense of the general residuary gift of Decedent's personal estate.

512 A.2d at 1023 (emphasis added). The residuary legatees now ask us to ignore long-settled and well-recognized law when they argue that this court intended "the debt" on the devised realty to include only the principal, but not the interest, on the deed of trust loan. This we cannot do.

Deeds of trust are essentially the same as common law mortgages. *Yasuna v. Miller,* 399 A.2d 68, 71 & n. 5 (D.C.1979) (citing cases). It is well established in the District of Columbia and elsewhere that in a deed of trust, as in a mortgage, the debt includes both the principal and the interest. *Taylor v. Drury,* 56 App.D.C. 266, 267, 12 F.2d 489, 490 (1926) (mortgage debt includes both principal and "interest accruing upon the principal up to the time of payment"); *Allstate Insurance Co. v. James,* 779 F.2d 1536, 1540 (11th Cir.1986) (mortgage debt includes unpaid principal and accrued interest); *Brockton Savings Bank v. Shapiro,* 311 Mass. 695, 700–02, 42 N.E.2d 826, 830 (1942) (payment of interest, as well as principal, on a mortgage debt is necessary to stave off foreclosure); *Weems v. American Security Insurance Co.,* 486 So.2d 1222, 1229 (Miss.1986) (debt owed on a promissory note secured by a deed of trust "certainly includes interest on the mortgage debt"); *see Metompkin Bank & Trust Co. v. Bronson,* 172 Va. 494, ——, 2 S.E.2d 323, 325 (1939) (secured creditor is entitled by contract to "payment of the entire debt, and the entire debt includes not only the principal but interest as an incident of the debt"). Moreover, in her will the testatrix devised the University Terrace house to her niece "absolutely and in fee simple." Thus the very terms of the will lead us to conclude that the residue must be drawn upon to extinguish the entire

amount due and owing under the deed of trust—principal plus interest—and that the mortgaged property must pass to the Martin children unencumbered by the deed of trust. *See Union Trust Co. v. Brendlinger,* 59 App.D.C. 294, 296, 40 F.2d 806, 808 (1930); *Tracy v. Atwell,* 58 App.D.C. 397, 32 F.2d 392 (1929); *O'Meara v. Shreve,* 58 App.D.C. 220, 26 F.2d 998 (1928); *In re Estate of Miller,* 127 F.Supp. 23, 26 (D.D.C. 1955); *Bridgeport Trust Co. v. Fowler,* 102 Conn. 318, 326–29, 128 A. 719, 722 (1925) (unless the will indicates otherwise, exoneration of a mortgage debt includes both principal and interest). "Where the realty is devised free of encumbrances, the interest as well as the principal of a mortgage is payable out of the personal estate...." 97 C.J.S. *Wills* § 1316, at 223 (1957) (footnote omitted).

## II

The residuary legatees also claim that Mr. Abrams, as personal representative of the estate, was not empowered to use money from the residue to pay the real estate taxes, insurance premiums, repair bills, and utility bills for the University Terrace house which came due from time to time. They contend that these types of expenses must instead be paid by the specific devisee, Mrs. Martin, or by her successors, the Martin children.

Mr. Abrams filed three statements of account with the Probate Division of the Superior Court—one in November 1983, one in August 1984, and one in November 1985. All three stated that disbursements were being made out of the estate to cover the expenses now in dispute. Yet the residuary legatees did not file an exception to any of the accountings until September 12, 1986. Consequently, Mr. Abrams argues that because an exception to an accounting must be filed with the Register of Wills no later than thirty days after the accounting is filed, D.C.Code § 20–726 (1989), the residuary legatees' exception was untimely and cannot now be considered. Although this argument is initially attractive, on closer examination we must reject it.

A cause of action usually accrues when a wrongful act occurs, resulting in injury. In some cases, however, the relationship between the act and the injury is so obscure that the cause of action accrues only when the party claiming injury discovers, or by reasonable diligence should discover, the injury, its cause in fact, and some evidence of wrongful conduct. This so-called "discovery rule" has been applied by this court in several areas of the law, including the law of estates and trusts. *See Interdonato v. Interdonato*, 521 A.2d 1124, 1135 (D.C.1987) (fraud and breach of fiduciary duty under a testamentary trust); *In re Estate of McCagg*, 450 A.2d 414, 418 (D.C. 1982) (dispute over two paintings claimed to be assets of estate); *see also Knight v. Furlow*, 553 A.2d 1232, 1233–1234 (D.C. 1989) (legal malpractice claim); *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1194 (D.C.1984) (breach of contract and breach of warranty claims); *Burns v. Bell*, 409 A.2d 614, 616–617 (D.C.1979) (medical malpractice claim). In the instant case, the accountings only informed the residuary legatees that Mr. Abrams was paying certain expenses related to the University Terrace property. At the time the accounts were filed, the residuary legatees could not be expected to know whether they or the specific devisee would ultimately be charged with these expenditures. It was not until the house was sold, until our opinion in *Martin I* was published, and until the estate was distributed that the residuary legatees could have known that the expenditures were to be charged to the residue and not to the specific devisee. Thus, applying the discovery rule, we hold that the residuary legatees are not time-barred from contesting the personal representative's power to pay expenses related to the devised realty from the residuary estate.

■ Nevertheless, they cannot prevail on the merits of this issue. D.C.Code § 20–741 (1989) empowers a personal representative to:

> (a) take possession of and hold assets owned by the decedent pending distribution or liquidation ...;
>
> \* \* \* \* \* \*

> (h) obtain insurance to protect the property of the estate against damage, loss, and liability ...;
>
> \* \* \* \* \* \*

> (j) pay taxes, assessments, and other expenses incident to the administration of the estate; [and]
>
> \* \* \* \* \* \*

> (r) pay valid claims and distribute the estate as provided in [Title 20 of the Code]. ...

As personal representative of the estate, Mr. Abrams took possession of the University Terrace house and preserved it as an asset by paying repair bills, insurance premiums, real estate taxes, water and sewer assessments, and the valid claims of utility companies. Then he discharged the indebtedness secured by the deed of trust and sold the house. All of these actions were authorized by the general statutory grant of powers to a personal representative, specifically in the subsections just quoted. We hold, therefore, that Mr. Abrams' payment of all of the contested expenses was a valid exercise of his statutory authority as personal representative.

The question remains, however, whether these expenses should be charged to the specific devisee or paid out of the residue. To that question we now turn.

### III

■ Under the common law and under the vast majority of state statutes governing descent and distribution, title to real property passes to the heirs or devisees immediately upon the death of the owner. *See Richardson v. Green*, 528 A.2d 429, 432–433 (D.C.1987); *Cunningham v. Rodgers*, 50 App.D.C. 51, 53, 267 F. 609, 611 (1920), *aff'd*, 257 U.S. 466, 42 S.Ct. 149, 66 L.Ed. 319 (1922); *Mayo v. Bank of Marvell*, 188 Ark. 330, 331–33, 65 S.W.2d 549, 550 (1933); *Board of County Commissioners v. City & County of Denver*, 193 Colo. 211, 213–14, 565 P.2d 212, 214 (1977); *In re Paradis' Estate*, 134 Me. 333, 334–38, 186 A. 672, 673–674 (1936); *see generally* 33 C.J.S. *Executors and Administrators*

§ 252, at 1262 (1942 & 1988 Supp.). Consequently, under the common law and such statutes, the devisees, not the residuary legatees, are responsible from the moment of the testator's death for paying the expenses incurred in maintaining and managing the property. *See, e.g., In re Estate of Reichel,* 28 Cal.App.3d 156, 159, 103 Cal. Rptr. 836, 838 (1972); *In re Paradis' Estate, supra,* 134 Me. at 338–40, 186 A. at 675–676.

In 1980 the common law rule was changed in the District of Columbia by the Probate Reform Act, D.C. Law No. 3–72, § 101, 27 D.C.Reg. 2155 (codified in Title 20 of the District of Columbia Code (1989)).[2] *See Richardson v. Green, supra,* 528 A.2d at 433.[3] With one exception not relevant here, the 1980 Act states that upon death "all property of a decedent ... shall pass directly to the personal representative, who shall hold the legal title for administration and distribution of the estate." D.C.Code § 20–105 (1989). In abrogating the common law rule, the District of Columbia Council stated its intent to place on the personal representative the "responsibility for maintenance, taxes, and insurance of a decedent's property" until the property was either distributed to the specific devisee or otherwise allotted. Council of the District of Columbia, Committee on the Judiciary, Report on Bill 3–91, The District of Columbia Probate Reform Act of 1980, at 9 (March 12, 1980) (hereafter *Committee Report*). The 1980 Act also empowers the personal representative to pay expenses specifically related to the maintenance and administration of the devised property. *See* D.C.Code § 20–741(h), (j), and (r), quoted at page 1302, *supra.*

Reading these provisions together, we conclude that the statute, by not only placing on the personal representative the responsibility for maintaining the decedent's property until it is distributed but also authorizing him or her to pay the expenses of doing so, necessarily imposes the cost of such maintenance on the entire estate (in particular, the residue) when the property is subject to exoneration. When the testator's intent is to pass the property whole or in kind to the devisee, without encumbrance, and when—as in this case—the property generates no income, we see no unfairness in permitting the residue to bear the expense of maintaining the property prior to distribution. It follows that the legitimate expenses incurred by Mr. Abrams in maintaining the University Terrace property, to which he held legal title until it was distributed and sold, were properly charged against the residue of the estate rather than to the specific devisee, Mrs. Martin.[4] *Cf. Vogel v. Saunders,* 68 App.D.C. 31, 34–35, 92 F.2d 984, 987–988 (1937) (a residuary legacy is not a legacy in the strict sense, since the residue is that which remains after proper debts and legal charges are paid, including debts related to real estate specifically bequeathed or devised); 4 W. BOWE & D. PARKER, PAGE ON THE LAW OF WILLS §§ 33.50–33.52 (1961)

---

2. The 1980 Act applies to the estates of all persons who died on or after January 1, 1981. D.C.Code § 20–109 (1989).

3. Maryland is the only jurisdiction outside the District of Columbia, as far as our research can determine, which has abandoned the common law rule. *See* Md.Est. & Trusts Code Ann. § 1–301 (1974); *see also Campbell v. Welsh,* 54 Md.App. 614, 625–27, 460 A.2d 76, 83 (1983) (stating that before 1969 Maryland adhered to the general rule that upon death a decedent's interest in real property devolved directly to his heirs or devisees). The District's and Maryland's statutes are contrary to the relevant provision of the Uniform Probate Code. *See* UNIF. PROBATE CODE § 3–101, 8 U.L.A. 221 (1983) ("Upon the death of a person, his real and personal property devolves to the persons to whom it is devised by his last will ...").

4. We stress that our holding is limited to cases in which the property is subject to exoneration and produces no income. We leave for another day the more difficult question of how maintenance expenses are to be paid in other situations. For example, when the property produces income, should the expenses attributable to the property during the administration of the estate be charged against that income? Does it make a difference whether the property is subject to exoneration? *See, e.g., In re Estate of Bixby,* 140 Cal.App.2d 326, 334, 295 P.2d 68, 72–73 (1956), quoted in *In re Estate of Reichel, supra,* 28 Cal.App.3d at 158, 103 Cal.Rptr. at 838; 6 W. BOWE & D. PARKER, PAGE ON THE LAW OF WILLS § 59.15, at 424 & n. 12 (1962).

(the residue is what is left after all other legacies, devises, and debts have been fully satisfied).

## IV

 Pointing out that the District's 1980 Act follows in many respects the revised Maryland Estates and Trusts Code,[5] the residuary legatees contend that the District of Columbia Code nonetheless contains a "void" not found in the Maryland Code. In Maryland the law provides in part:

> In the event that the income from the property to which the specific legatee is entitled is not sufficient to pay the taxes, ordinary repairs, and other expenses of management and operation relating to the property, or if there is no income, then expenses in excess of income shall be charged to and paid by the specific legatee immediately upon written demand of the personal representative, or at the option of the specific legatee, charged against a share of the estate to which the legatee may be entitled.

Md.Est. & Trusts Code Ann. § 7–304(b)(1) (1974). There is no comparable statutory provision in the District of Columbia. To reach what the residuary legatees claim to be the fair result, they urge us to fill this alleged gap in the District of Columbia Code by reading into it this portion of the Maryland Code. We decline to do so for two reasons.

First, and obviously, courts do not have legislative powers. We cannot adopt language from a Maryland statute to remedy any supposed lacunae in our own probate code. Instead, we must construe our local statute according to its own language and the Council's intent in drafting it the way it did. *See, e.g., Sanker v. United States,* 374 A.2d 304, 307 (D.C.1977). Second, the fact that the Council chose to pattern much of the 1980 Act after Maryland law, including the unique provision that upon death legal title vests in the personal representative and not in the devisee, yet chose not to enact some variant of section 7–304(b)(1) of the Maryland Code, leads us quickly to conclude that the Council deliberately decided to make the estate, not the devisee, responsible for paying the expenses connected with preservation of specifically devised property. *See, e.g., District of Columbia Department of Corrections v. Teamsters Local 246,* 554 A.2d 319, 324 (D.C.1989) (enactment of statute based on similar law in California, but different in three subsections, showed Council's intent not to follow California law in these three respects).

When, under the common law rule, title to real estate vested upon the owner's death in a devisee, the devisee could immediately convey his or her interest in the devised property to someone else, with the grantee taking title subject to the administration of the estate. 31 AM.JUR.2D *Executors and Administrators* § 246 (1967). By immediately selling or renting the property, the devisee thus had the power to avoid or mitigate any expenses connected with managing it. Under the new probate code, however, he or she has no such power because title vests not in the devisee, but in the personal representative. Thus our construction of the Code produces the most reasonable result in this case, since it would be contrary to the principle underlying the doctrine of exoneration to charge the contested expenses to the appellees— the Martin children and their mother—who had little or no control over the property during the administration of the estate, rather than to the estate via the personal representative, in whom title to the property vested upon the testatrix's death.[6]

---

5. The District of Columbia Council was prompted to revise the District's probate code because Maryland had "substantially revamped and improved" its estate law in 1969. *Committee Report, supra* at 1. Consequently, the Probate Reform Act of 1980 was patterned in large part after the 1969 Maryland revision. *Compare, e.g.,* D.C.Code § 20–741 (1989) (general powers of personal representative) *with* Md.Est. & Trusts Code Ann. § 7–401 (1974) (same).

6. We note again, however (see note 4, *supra*), that our holding in this case is limited to the payment of expenses of maintaining property which is subject to exoneration and produces no income. We add only that the Council may wish to take another look at this issue, particularly with respect to the alleged "gap" in the

## V

■ Finally, the residuary legatees contend that even if these expenses were properly paid from the assets of the residuary estate, it was unreasonable, and therefore a breach of his fiduciary duty, for Mr. Abrams to hold onto this non-income-producing property for almost three years after the death of the testatrix.[7] In support of this contention the residuary legatees cite two code provisions that specify the time during which claims against a decedent and her estate should be filed and paid, D.C.Code §§ 20–704(a) and 20–909 (1989), and one provision that governs the giving of notice of a proposed distribution of the assets of an estate, D.C.Code § 20–1102(d) (1989). Adding these time periods together, the residuary legatees maintain that the total, which is nine months, is the maximum time in which claims against an estate may be paid, and the assets distributed, by a personal representative.[8]

The short answer to this argument is that the Code sets no such deadline for the distribution of an estate. D.C.Code § 20–701(b) (1989) provides:

> Unless the time of distribution is extended by the Court for good cause shown, the personal representative shall distribute all the assets of the estate in such representative's possession or control within 30 days of the approval of the final account.

The initial account must be rendered within a year and a day after publication of the notice of the personal representative's appointment, and subsequent accounts rendered every nine months thereafter. D.C. Code § 20–724 (1989). But there is no specified time for filing the final account. Thus the Code clearly contemplates routine administrations in which the assets of an estate will not be distributed for a year or more. Given this statutory scheme, we reject the residuary legatees' contention that Mr. Abrams' failure to distribute the property to the devisee within nine months after the testatrix's death was necessarily unreasonable.

■ If the residuary legatees felt that Mr. Abrams was not properly doing his job as personal representative, their remedy was to seek his removal and the appointment of a successor under D.C.Code § 20–526 (1989). Since they did not, their only recourse now is to pursue their claim against him for his alleged (but so far unproven) breach of his fiduciary duty. Because the trial court has not yet addressed that claim, we remand this case so that it may do so.[9] In all other respects, the trial court's order of August 6, 1987, from which this appeal is taken, is affirmed.

*Affirmed in part, remanded in part.*

---

Code, before another case presenting such problems comes into the court system.

7. Mr. Abrams asserts, on the other hand, that he was prevented from selling the property any sooner because of the litigation instituted by the residuary legatees—litigation which culminated in our decision in *Martin I.*

8. Section 20–704(a) states that from the date of the first publication notifying creditors that a personal representative has been appointed for an estate, persons with claims against the decedent have six months to present their claims to the personal representative. Section 20–909 requires the personal representative to pay claims against the estate within eight months from the date of first publication, unless the time is extended by the court for good cause shown. Sec-

tion 20–1102(d) provides that a personal representative may give notice of a proposed distribution to all persons who have a right to object to it; in turn, those persons have thirty days to object.

9. D.C.Code § 20–903(a)(2) (1989) states that "all claims against the estate based on the conduct of ... a personal representative shall be barred unless an action is commenced against the estate within 6 months of the date the claim arose." On remand, therefore, the court must first decide whether any claim against the estate (as opposed to a claim against Mr. Abrams himself) for an alleged breach of fiduciary duty is time-barred.